# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

DENNIS HANSCOM, on behalf of himself
and all others similarly situated,

                Plaintiff,

    vs.

NORDSEC LTD., NORDSEC B.V.,
NORDVPN S.A., NORD SECURITY INC.,
and TEFINCOM S.A. d/b/a NORDVPN,

              Defendants.

**CASE NO. 3:24-CV-00277-KDB-DCK**

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION
## TO DISMISS PLAINTIFF'S COMPLAINT

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), Defendants

NordSec Ltd, NordSec B.V., Nordvpn S.A., Nord Security Inc., and Tefincom S.A. move to

dismiss Plaintiff's Complaint for lack of personal jurisdiction, lack of subject-matter jurisdiction,

and failure to state a claim upon which relief can be granted.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

STATEMENT OF FACTS ............................................................................................... 2

    I.     Plaintiff Subscribes To NordVPN And Related Services. .......................... 2

    II.    Nord Clearly And Conspicuously Disclosed Subscription, Renewal, and
        Cancellation Terms. .................................................................................. 3

    III.    Plaintiff Cancels His Automatic Renewal ................................................ 5

    IV.    Defendants ................................................................................................ 5

LEGAL STANDARD ....................................................................................................... 6

ARGUMENT ................................................................................................................... 7

    I.     Plaintiff Lacks Article III Standing For His ARS And UDTPA Claims. ................. 7

    II.    The Court Should Dismiss Plaintiff's ARS and UDTPA Claims For Failure To
        State A Claim. ............................................................................................. 9

        A.    Plaintiff Fails To State A Claim Under The ARS Or UDTPA Because He
            Cannot Allege An Injury Caused By A Relevant Violation. ...................... 9

        B.    Plaintiff Has Not Alleged An ARS Violation. ........................................... 10

            (i)    Nord Clearly And Conspicuously Disclosed The Automatic
                Renewal Terms In Compliance With The ARS (Section (a)(1)). ... 11

            (ii)   Nord Adequately Disclosed Its Cancellation Terms...................... 13

        C.    Plaintiff Has Not Alleged A UDPTA Violation ........................................ 14

    III.    Plaintiff Has Not Adequately Alleged His Tort Claims. ......................................... 16

        A.    The Economic Loss Doctrine Bars The Tort Claims................................. 16

        B.    Plaintiff Fails To State Claims For The Asserted Torts............................. 17

    IV.    The Court Does Not Have Personal Jurisdiction Over The Non-Contracting
        Defendants. ................................................................................................. 19

        A.    There Is No General Jurisdiction Over Any Defendants. ........................... 20

B.    There Is No Specific Jurisdiction Over The Non-Contracting Defendants. 20

(i)    Plaintiff Has Alleged No Facts Establishing Purposeful Availment By The Non-Contracting Defendants. ........................................... 21

(ii)    Plaintiff's Claims Do Not Arise From Or Relate To The Non-Contracting Defendants' Contacts With North Carolina, If Any. .. 22

(iii)    The Exercise Of Jurisdiction Over The Non-Contracting Defendants Would Be Unreasonable. ................................................ 23

C.    Defendants Are Not Alter Egos Of Each Other. ........................................ 23

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................6

*Belk, Inc. v. Meyer Corp., U.S.*,
    679 F.3d 146 (4th Cir. 2012), *as amended* (May 9, 2012) ...................................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................6

*Bonham v. Wolf Creek Acad.*,
    767 F. Supp. 2d 558 (W.D.N.C. 2011) .................................................................19

*Booe v. Shadrick*,
    369 S.E.2d 554 (N.C. 1988) ..................................................................................18

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ..............................................................................................20

*Bush v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
    124 F. Supp. 3d 642 (E.D.N.C. 2015) .....................................................................7

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*,
    334 F.3d 390 (4th Cir. 2003) .................................................................................19

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) .................................................................................................7

*Consulting Eng'rs Corp. v. Geometric Ltd.*,
    561 F.3d 273 (4th Cir. 2009) ...........................................................................20, 23

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ..............................................................................................19

*DP Envtl. Srvs., Inc. v. Bertlesen*,
    834 F. Supp. 162, 166-67 (M.D.N.C. 1993) ...........................................22, 23, 24, 25

*Drager v. PLIVA USA, Inc.*,
    741 F.3d 470 (4th Cir. 2014) ...................................................................................7

*DWM Int'l, Inc. v. Cristaux, Inc.*,
    No. 3:23-cv-00351, 2023 WL 8587271 (W.D.N.C. Dec. 11, 2023) (J. Bell)...........19

*Evans v. B. F. Perkins Co.*,
    166 F.3d 642 (4th Cir. 1999) .......................................................................7, 12, 14

*Fidrych v. Marriott Int'l, Inc.*,
    952 F.3d 124 (4th Cir. 2020) .................................................................................22

*Foodbuy, LLC v. Gregory Packaging, Inc.*,
    987 F.3d 102 (4th Cir. 2021) ....................................................................................14

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)....................................................................................................19

*Grassy Creek Neighborhood All., Inc. v. City of Winston-Salem*,
    542 S.E.2d 296 (N.C. App. 2001)...............................................................................11

*Gray v. N. Carolina Ins. Underwriting Ass'n*,
    529 S.E.2d 676 (N.C. 2000)...................................................................................9, 10

*Gunn v. Minton*,
    568 U.S. 251 (2013)......................................................................................................7

*Hobbs v. St. Martin*,
    198 F. Supp. 3d 530 (D. Md. 2016), *order vacated in part sub nom. Hobbs v. Martin*,
    No. CV JKB-16-749, 2017 WL 105675 (D. Md. Jan. 11, 2017)................................17

*Hudson-Cole Dev. Corp. v. Beemer*,
    511 S.E.2d 309 (N.C. App. 1999)...............................................................................18

*IMO Indus., Inc. v. Seim S.R.L.*,
    No. 3:05-cv-420-MU, 2006 WL 3780422 (W.D.N.C. Dec. 20, 2006)......................22

*In re Bulldog Trucking, Inc.*,
    147 F.3d 347 (4th Cir. 1998) .......................................................................................7

*Int'l Shoe Co. v. State of Wash.*,
    326 U.S. 310 (1945)....................................................................................................19

*Jacobs v. Stein*,
    No. 3:16-cv-00768-MOC-DSC, 2017 WL 1017125 (W.D.N.C. Mar. 15, 2017).............24, 25

*Kelly v. Georgia-Pac. LLC*,
    671 F. Supp. 2d 785 (E.D.N.C. 2009).........................................................................16

*Krausz Indus. Ltd. v. Smith-Blair, Inc.*,
    188 F. Supp. 3d 545 (E.D.N.C. 2016).................................................................24, 25

*Legacy Data Access, Inc. v. Cadrillion, LLC*,
    889 F.3d 158 (4th Cir. 2018) .....................................................................................16

*Lianyungang FirstDart Tackle Co. v. DSM Dyneema B.V.*,
    871 F. Supp. 2d 482 (E.D.N.C. 2012).........................................................................20

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)......................................................................................................7

*Manoula, LLC v. Ohio Security Ins. Co.*,
    No. 1:21-cv-00718, 2022 WL 129322 (M.D.N.C. Jan. 13, 2022)............................6, 7, 14, 18

iv

*McManus v. GMRI, Inc.*,
   No. 3:12-cv-009-DCK, 2012 WL 2577420 (W.D.N.C. July 3, 2012)....................................18

*N. Carolina State Ports Auth. v. Lloyd A. Fry Roofing Co.*,
   240 S.E.2d 345 (N.C. 1978)...................................................................................................16

*Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*,
   591 F.3d 250 (4th Cir. 2009) ............................................................................................6, 14

*Noble v. Hooters of Greenville (NC), LLC*,
   681 S.E.2d 448 (N.C. App. 2009).......................................................................................9, 10

*Perkins v. Arkansas Trucking Servs., Inc.*,
   528 S.E.2d 902 (N.C. 2000).....................................................................................................10

*Perkins v. New York Times Co.*,
   No. 22-cv-5202 (PKC), 2023 WL 3601489 (S.D.N.Y. May 23, 2023)......................... *passim*

*Pike v. Wells Fargo Bank, N.A.*,
   No. 7:20-CV-00219-M, 2022 WL 1196694 (E.D.N.C. Apr. 21, 2022) ...............................18

*Pinkley, Inc. v. City of Frederick*,
   191 F.3d 394 (4th Cir. 1999) .....................................................................................................7

*Rountree v. Chowan Cnty.*,
   796 S.E.2d 827 (N.C. App. 2017)......................................................................................16, 18

*Saudi v. Northrop Grumman Corp.*,
   427 F.3d 271 (4th Cir. 2005) ...................................................................................................23

*Severn Peanut Co., Inc. v. Indus. Fumigant Co.*,
   807 F.3d 88 (4th Cir. 2015) .....................................................................................................16

*Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*,
   911 F.3d 192 (4th Cir. 2018) ...................................................................................................21

*Spruill v. Lake Phelps Volunteer Fire Dep't, Inc.*,
   523 S.E.2d 672 (N.C. 2000)......................................................................................................10

*United States v. J & E Salvage Co.*,
   55 F.3d 985 (4th Cir. 1995) .....................................................................................................17

*Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*,
   723 S.E.2d 744 (N.C 2012).......................................................................................................17

*Veney v. Wyche*,
   293 F.3d 726 (4th Cir. 2002) .....................................................................................................6

*Viveros v. Audible, Inc.*,
   No. C23-cv-0925-JLR, 2023 WL 6960281 (W.D. Wash. Oct. 20, 2023) ..............................10

v

*Waddell v. U.S. Bank Nat'l Ass'n*,
    395 F. Supp. 3d 676 (E.D.N.C. 2019)..............................................................14, 15

*White by & through White v. Aetna Life Ins. Co.*,
    519 F. Supp. 3d 253 (W.D.N.C. 2021) ....................................................................22

*WLC, LLC v. Watkins*,
    454 F. Supp. 2d 426 (M.D.N.C. 2006) ....................................................................24

*Wooton v. CL, LLC*,
    No. 2:09-CV-34-FL, 2010 WL 3767308 (E.D.N.C. Sept. 27, 2010), aff'd, 504 F.
    App'x 220 (4th Cir. 2013) ......................................................................................17

*Wyatt v. Walt Disney World Co.*,
    565 S.E.2d 705 (N.C. App. 2002)............................................................................23

**STATUTES**

N.C. Gen. Stat. § 75–16 ....................................................................................................9, 10

N.C. Gen. Stat. § 75-1.1 ......................................................................................................1, 6

N.C. Gen. Stat. § 75-41 ................................................................................................. *passim*

**RULES**

Fed. R. Civ. P. 8 ..................................................................................................................14

Fed. R. Civ. P. 9(b) ..................................................................................................6, 14, 18

Fed. R. Civ. P. 12(b)(6).........................................................................................6, 10, 14

**OTHER AUTHORITIES**

U.S. Const. amend. XIV ....................................................................................................19

U.S. Const. art. III...............................................................................................................7

## INTRODUCTION

North Carolina's Autorenewal Statute ("ARS") (N.C. Gen. Stat. § 75-41) requires providers of automatically renewing subscriptions to disclose renewal terms and cancellation procedures "clearly and conspicuously." Plaintiff Dennis Hanscom alleges that Nordvpn S.A. ("Nord") and its affiliates failed to make ARS-compliant disclosures in connection with online subscription services that he purchased from them, and, on that basis, he asserts claims under the ARS and North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1), and various tort theories. But all of his claims suffer from an obvious and fatal defect: *he was never charged for an autorenewal*.

According to his Complaint, Plaintiff enrolled in, paid up front for, and agreed to the terms of a two-year plan for a suite of online services from Nord. His subscription was set to renew automatically after two years, but he canceled the renewal before then, with a single contact to customer support, as he admits. As a result, his subscription never renewed, and Nord never charged him for a renewal term. As its name suggests – and as its text emphasizes – the ARS applies only when there is injury associated with a service's *autorenewal*. Because Plaintiff suffered no such injury, the Court should dismiss his Complaint for lack of subject matter jurisdiction. Even if Plaintiff did have standing, the Court should dismiss for the independently sufficient reason that Plaintiff fails to state a claim under any theory. These grounds for dismissal apply to all causes of action, as an ARS violation is their common predicate.

In addition, the Court should dismiss all claims against Nord's affiliates NordSec Ltd, NordSec B.V., Nord Security Inc., and Tefincom S.A. (the "Non-Contracting Defendants") for lack of personal jurisdiction, as they have no connection to this forum or to Plaintiff's claims.

**STATEMENT OF FACTS**

**I.     Plaintiff Subscribes To NordVPN And Related Services.**

Plaintiff enrolled in an automatically renewing, two-year plan for NordVPN,

NordLocker, and NordPass on August 2, 2023.  Compl. ¶¶ 43, 54, 63.  During enrollment, he

agreed to terms of service governing his "use of and access to the [services], and any Software

… provided by Nord."  RJN Exhibit[1] 1 (Terms of Service) ¶ 1.1[2]; *see also* Compl. ¶ 43 ("By

submitting your information and continuing to purchase, you agree to our <u>terms of service</u> and

<u>privacy policy</u>.").  Nord was the provider for the services Plaintiff purchased.  RJN Exhibit 1 ¶

1.4 (under the terms of service, "Nord," "we," "us," or "our" mean "nordvpn S.A.").

As Plaintiff alleges, during the sign-up process, he reached a checkout page that offered a

"2-year plan" for a "Total" price of "$111.41*" for this initial term.  Compl. ¶ 43.[3]  The asterisk

referred Plaintiff to the following auto-renewal terms, which provided that his plan would renew

for one year after the initial two-year period:

> The introductory price is valid for the first term of your subscription.  Then it will
> be automatically renewed for an additional 1-year term annually and you'll be
> charged the <u>then-applicable renewal price</u>.  Savings granted by the introductory
> price are compared to the current renewal price, which is subject to change.  But
> don't worry — we'll always send you a notification email prior to charging.  <u>Learn
> more</u>

*Id.*  To complete the transaction, Plaintiff had to take affirmative action: inputting at least his

email address, payment information, and clicking the "Continue" button.  *Id.*  He admits that he

---

[1] Citations to "RJN Exhibit" refer to Defendants' concurrently filed request for judicial notice
and the exhibits attached to the Declaration of Samuel Sahagian In Support of Defendants'
Motion to Dismiss.
[2] https://my.nordaccount.com/legal/terms-of-service/ [https://archive.fo/8nx4S]
[3] The screenshots in Plaintiff's complaint (Compl. ¶¶ 43, 54) show a total price of $111.41 for a
two-year subscription for NordVPN, but Plaintiff later alleges that he paid $131.76 for a two-
year subscription for NordVPN, NordLocker, and NordPass (*id*. ¶¶ 64, 68).

2

instantly received a receipt that showed the payment for his purchase, that he "downloaded the NordVPN app," and that he "accessed his NordSec offerings a few times during the [alleged] trial period." *Id*. ¶¶ 54, 65. Thus, he knew that he had paid for VPN services, and he immediately received and used the services he had purchased. *Id*. ¶¶ 63-64.

## II. Nord Clearly And Conspicuously Disclosed Subscription, Renewal, and Cancellation Terms.

In the "Introduction" to the agreed terms of service, Nord explains that:

> All our paid Services are provided on a Subscription basis. *This means that the provision of the Services will auto-renew at the end of the current Subscription period, unless you cancel it before the auto-renewal.* For a summary of key aspects related to your Subscription of our Services, please read the **Subscription Terms**.

RJN Exhibit 1 ¶ 1.2 (italicized emphasis added). The terms of service further disclose the auto-renewal and cancellation terms in the "**Subscription and Auto-Renewals**," "**Prices and Payments**" and "**Cancellation and Refund Policy**" sections, emphasizing that subscribers may cancel auto-renewal at any time, and that "canceled Subscriptions will *not* be refunded *for the unused part of the ongoing Service period*":

> **3.1. Subscription.** All our paid Services are provided on a Subscription basis….Please review **Subscription Terms** for more information.

> **3.2. Auto-Renewal.** After the end of your Service period, your subscription will automatically renew … *unless you decide to cancel the Subscription renewal before the day of the charge.* If you do not cancel the Subscription in such due course, your chosen payment method will be charged the then-current renewal price for the upcoming defined Service period.

> […]

> **5.3 Recurring Payments.** When you purchase the Services on a Subscription basis (e.g., monthly, annually, or otherwise), *you agree that (i) Services will auto-renew until you cancel it, (ii) you are authorizing recurring payments* … For more information about the Subscription and its cancellation please read our **Subscription terms**.

> […]

**6.1 Subscription Cancellation.** You have a right to cancel your Subscription (i.e., *turn off auto-renewals for the upcoming Service period*) at any time (please note that *canceled Subscriptions will not be refunded for the unused part of the ongoing Service period*).

[…]

**6.7 Canceling the Auto-Renewal of the Subscription Purchased on our Websites.** If you have purchased an automatically renewing Subscription on our Websites and would like to stop it from automatically renewing, you can do so at any time from your Nord Account. *Canceled Subscriptions will not be refunded for the unused part of the ongoing Service period.*

*Id.* ¶¶ 3.1, 3.2, 5.3, 6.1, 6.7 (italicized emphases added).

The hyperlinked "**Subscription Terms**" in paragraphs 1.2, 3.1, and 5.3 of the Terms of Service *also* disclose the renewal and cancellation terms:

After the end of your initial plan, *your subscription will be automatically renewed, and you will be charged the then-current price of the service*. For more information, read our **Terms of Services**.

[…]

All prices, including recurring subscription fees, are subject to change. Any changes in pricing will be provided in the initial offer or communicated to you in advance.

[…]

*You can cancel a recurring subscription at any time from your Nord account*, iTunes/App Store, or Google Play Store. *Canceled accounts will not be refunded for the unused part of the ongoing service period*. For further information about the cancellation policy, read our **Terms of Services**.

RJN Exhibit 2 (italicized emphasis added).[4] Users may also contact customer support for any request related to their subscription services, including to cancel their subscription. RJN Exhibit 1 ¶ 18.8.

---

[4] https://my.nordaccount.com/legal/terms-of-service/subscription/ [https://archive.fo/nSxlg]

## III.    Plaintiff Cancels His Automatic Renewal

On August 15, 2023, Plaintiff contacted customer support to cancel his subscription. Compl. ¶ 66. Customer support complied and "informed [him] that he would not be charged [for another two-year, auto-renewing subscription] unless he resubscribed." *Id.* Later that day, he "received an email … confirming that his automatic renewal was cancelled." *Id.* ¶ 67. Plaintiff was never charged for a renewal term, and he does not allege otherwise. The $131.76 that Plaintiff alleges as his sole injury was for the initial subscription term. Compl. ¶ 43, 54, 64.

## IV.    Defendants

The Non-Contracting Defendants did not participate in the alleged conduct giving rise to this lawsuit. Declaration of Olga Sinkeviciene ("Sinkeviciene Decl.") ¶ 3; Declaration of Ruta Gorelcionkiene ("Gorelcionkiene Decl.") ¶ 3; Declaration of Geraldas Kasulis ("Kasulis Decl.") ¶ 3; Declaration of Alina Gatsaniuk ("Gatsaniuk Decl.") ¶ 3. They did not sign Plaintiff up for any services, and they did not charge Plaintiff for or provide the services at issue. *Id.* At the time of and before the alleged conduct, the Non-Contracting Defendants had no employees or contractors in North Carolina. Sinkeviciene Decl. ¶ 9; Gorelcionkiene Decl. ¶ 9; Kasulis Decl. ¶ 9; Gatsaniuk Decl. ¶ 9. They have no offices or property in North Carolina, and they do not ship products into North Carolina or market or advertise retail consumer services there. Sinkeviciene Decl. ¶¶ 9-14; Gorelcionkiene Decl. ¶¶ 9-14; Kasulis Decl. ¶¶ 9-11; Gatsaniuk Decl. ¶¶ 9-11.

NordSec Ltd is a holding company that once owned the intellectual property of the Nord brand. Sinkeviciene Decl. ¶ 3. It is organized under the laws of England & Wales with its principal place of business is in London, England. *Id.* NordSec B.V. is a holding company that currently owns the intellectual property. Gorelcionkiene Decl. ¶ 3. It is organized under the laws of the Netherlands with its principal place of business in Amsterdam, the Netherlands. *Id.*

Nord Security Inc. sells and provides business-to-business services, but not retail consumer services. Kasulis Decl. ¶ 3. It is a Delaware corporation with its principal place of business in Lewes, Delaware. *Id*. Tefincom S.A. was the contracting entity for retail consumer VPN services purchased on or before November 15, 2020, only. Gatsaniuk Decl. ¶ 3.[5] It is a Panama corporation with its principal place of business in Panama City, Panama. *Id*. Defendants keep their own finances, hold their own board meetings, have their own corporate records, and generally do not share officers and directors. Declaration of Jurgita Baltramiejuniene ("Baltramiejuniene Decl.") ¶¶ 4-8; Sinkeviciene Decl. ¶¶ 4-8; Gorelcionkiene Decl. ¶¶ 4-8; Kasulis Decl. ¶¶ 4-8; Gatsaniuk Decl. ¶¶ 4-8.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Nor should a court "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

Under Rule 9(b), claims that sound in fraud, including those under the UDTPA (N.C.G.S. § 75-1.1 *et seq.*), must "state with particularity the circumstances constituting fraud." *See*

---

[5] Tefincom might still be the contracting entity for contracts entered into on or before that date, but Tefincom S.A. did not offer new contracts or consumer VPN services after November 15, 2020, including in 2023. Gatsaniuk Decl. ¶ 3.

*Manoula, LLC v. Ohio Security Ins. Co.*, No. 1:21-cv-00718, 2022 WL 129322, at \*4 (M.D.N.C. Jan. 13, 2022) (citing Fed. R. Civ. P. 9(b) and collecting cases). To satisfy Rule 9(b)'s heightened pleading standard, plaintiffs must describe the "who, what, when, where, and how of the alleged fraud." *Id.* at \*3 (internal marks omitted). Courts should dismiss with prejudice when a proposed amendment would be futile. *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014).

## ARGUMENT

### I. Plaintiff Lacks Article III Standing For His ARS And UDTPA Claims.

Because Plaintiff does not allege harm traceable to a violation of the ARS and UDTPA, he cannot satisfy the "irreducible constitutional minimum" of injury required for subject matter jurisdiction, and the Court should dismiss. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "[F]ederal courts are courts of limited jurisdiction, constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998); *see Gunn v. Minton*, 568 U.S. 251, 256 (2013). Subject-matter jurisdiction is not presumed. *See Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999). Rather, the plaintiff bears the burden of proving that jurisdiction exists. *Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). For each asserted claim, "to satisfy Article III's standing requirements, a plaintiff must show that: (1) he has suffered an injury-in-fact; (2) the injury is fairly traceable to the challenged action of defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Bush v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 124 F. Supp. 3d 642, 651 (E.D.N.C. 2015) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 180–81 (2000)). "[A]ny injury in fact must be fairly traceable to" the legal violation

asserted. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411 (2013).

Plaintiff's alleged harms are *not* traceable to violations of the ARS. The ARS imposes disclosure obligations on those providing contracts that "renew[] unless the consumer cancels the contract." N.C. Gen. Stat. § 75-41(a). As the remedy for a violation, the ARS "renders the automatic renewal clause void and unenforceable." *See id.* § 75-41(e). Plaintiff alleges a single injury: that he paid $131.76 for "subscriptions he did not want." *Id*. ¶¶ 62-75. But that payment was *not for a renewal*; indeed, Plaintiff admits that he canceled the automatic renewal (with a single contact to customer support) before his subscription was set to renew. *Id.* at ¶¶ 66-67. The payment was for the *initial* period, as is evident from his allegations, including the representative sign-up screenshots. *Id.* ¶¶ 43, 54.

Because Plaintiff suffered no harm associated with an autorenewal, his allegations about the insufficiency of Nord's disclosures—*e.g.*, improper font size and text placement in Nord's autorenewal disclosures (*id.* ¶¶ 43-52)—are irrelevant for purposes of standing even if true (and they are not; see below). The same holds for his allegations about inadequate disclosure of cancellation processes (*id.* ¶¶ 58-61). Plaintiff's allegations about misleading free-trial periods (*id.* ¶¶ 65, 68), and about being confused or deceived into "subscriptions he did not want" (*id.* ¶ 73), are likewise irrelevant, as, again, they do not relate to *autorenewal*. (Nor, indeed, do the words "free trial" appear in the screenshots on which Plaintiff relies (*id*. ¶¶ 43, 53-54).) Plaintiff might not have "wanted" the *initial* subscription—though he admits paying for and using the services (*id.* ¶ 65)—but standing for an *ARS* claim depends on whether Plaintiff paid for a *renewal* term. He did not.

Plaintiff's UDTPA claim depends on the same allegations without alleging meaningful separate unfair or deceptive acts or practices (*id.* ¶¶ 96-107). Plaintiff therefore lacks standing

for that claim as well.[6]  The Court should dismiss counts 1 and 2 with prejudice.

## II.    The Court Should Dismiss Plaintiff's ARS And UDTPA Claims For Failure To State A Claim.

### A.    Plaintiff Cannot Allege An Injury Caused By A Relevant Violation.

To have a "right of action" for claims under N.C. Gen. Stat. Chapter 75, including violations of the ARS and UDTPA, a party must have been "injured … by reason of any act or thing done ... in violation of the provisions of this Chapter."  N.C. Gen. Stat. § 75–16; *Noble v. Hooters of Greenville (NC), LLC*, 681 S.E.2d 448, 451-52 (N.C. App. 2009).  A party must allege facts showing that Defendant "caused" him an "injury" by committing a "violation" of Chapter 75.  *Id.* ("[I]n order to determine whether Plaintiffs had standing to bring their UDTPA claim in this case, we must determine whether Plaintiffs' complaint alleged facts sufficient to establish that their injuries were the result of a 'violation' of Chapter 75."); *Gray v. N. Carolina Ins. Underwriting Ass'n*, 529 S.E.2d 676, 681 (N.C. 2000) (A plaintiff must plead that the alleged practice "proximately caused injury to plaintiff[].").

The ARS addresses injury associated with unlawful *autorenewals* only.  N.C. Gen. Stat. § 75-41.  Plaintiff alleges violations of the ARS renewal and cancellation disclosure requirements, and he seeks "monetary damages as a result of Defendants' conduct" (Compl. ¶ 94), but the *only* injury that he identifies, $131.76, was the cost of his *initial* subscription term.  *Id.* ¶¶ 43, 54, 69.  Indeed, Plaintiff admits that he canceled the automatic renewal before his subscription was set to renew.  *Id.* ¶¶ 66-67.  Plaintiff has therefore failed to plead an injury caused by the ARS violation he asserts.  Plaintiff relies almost entirely on an alleged ARS violation for his UDTPA claim, and

---

[6] Even if Plaintiff's UDTPA claim could be construed to encompass his allegations that Nord's cancellation *process* was too difficult (Compl. ¶¶ 53-61), Plaintiff suffered no injury traceable to those allegations either, because he canceled the automatic renewal before his subscription renewed (*Id.* ¶¶ 66-67).

he identifies no specific additional injury.  *Id*. ¶¶ 96-107.

The Court should dismiss Plaintiffs ARS and UDTPA claims for failure to state a cause of action under Federal Rule of Civil Procedure 12(b)(6): Plaintiff does not—and, given his canceled automatic renewal, cannot—allege injury or causation with respect to the renewal or cancellation disclosures of the ARS.  N.C. Gen. Stat. § 75–16; *see Noble*, 681 S.E.2d at 451-52; *Gray*, 529 S.E.2d at 681; *Viveros v. Audible, Inc.*, No. C23-cv-0925-JLR, 2023 WL 6960281, at *6 (W.D. Wash. Oct. 20, 2023) (plaintiff "lacks standing" under California auto-renewal statute to sue for allegedly non-compliant cancellation process because she "was able to cancel her Audible Subscription online").

### B.  Plaintiff Has Not Alleged An ARS Violation.

Even if Plaintiff did have standing under Chapter 75, he has failed to state a claim under the ARS because, based on his own allegations and evidence that this Court may and should judicially notice, Nord complied with ARS disclosure requirements.

The ARS requires persons offering automatically renewing contracts to (1) "[d]isclose the automatic renewal clause clearly and conspicuously in the contract or contract offer" and (2) "[d]isclose clearly and conspicuously how to cancel the contract in the initial contract, contract offer, or with delivery of products or services."  N.C. Gen. Stat. § 75-41(a). [7]  The ARS does not define "clear and conspicuous," leaving the term to its plain meaning interpretation.  *Spruill v. Lake Phelps Volunteer Fire Dep't, Inc.*, 523 S.E.2d 672, 675 (N.C. 2000) (courts applying North Carolina law "must always accord words undefined in a statute their plain and definite meaning when the statutory language at issue is clear and unambiguous"); *Perkins v. Arkansas Trucking*

---

[7] Though not applicable here, the ARS also contains disclosure requirements if the terms of the contract will change upon automatic renewal.

*Servs., Inc.*, 528 S.E.2d 902, 904 (N.C. 2000). To be "clear and conspicuous" under the ARS, a disclosure need only be "obvious or plainly visible to a person reviewing a contract or contract offer, and not require that person to pore over the text of an agreement to find the particular provision in a sea of text." *Perkins v. New York Times Co.*, No. 22-cv-5202 (PKC), 2023 WL 3601489, at *3-4 (S.D.N.Y. May 23, 2023) (dismissing North Carlina ARS claim in part). The disclosure need *not*: (1) "always include attention-getting attributes such as size, brilliance or contrast, but such features may be useful in context, particularly in a dense, multi-paragraph text, where essential provisions could end up buried and unnoticed amid the fine print"; (2) meet any specific formatting requirements, such as "offsetting size, color or font from the surrounding text"; or (3) be close to the "purchase" button on a webpage. *Id.*

### (i) *Nord Clearly And Conspicuously Disclosed The Automatic Renewal Terms In Compliance With The ARS (Section (a)(1)).*

The ARS requires renewal term disclosures "in the contract *or* contract offer." N.C. Gen. Stat. § 75-41(a) (emphasis added). As long as Nord made the required disclosure in one of those places, it complied with the ARS. *See Grassy Creek Neighborhood All., Inc. v. City of Winston-Salem*, 542 S.E.2d 296, 300 (N.C. App. 2001) ("Where a statute contains two clauses … connected by the disjunctive (*e.g.* 'or')," the statute "will apply to cases falling within either of them." (quoting *Davis v. N.C. Granite,* 131 S.E.2d 335, 337 (N.C. 1963)). Because Plaintiff does not make the allegation as to the *contract*, he has failed to state a claim under the ARS. In any event, Nord's disclosures, in both contract and the offer, were ARS compliant.

**The Contract**. The parties' contract clearly and conspicuously disclosed Nord's renewal terms. At the top of the terms of service, Nord explains, under the bolded heading "**Subscription**" that: "All our paid Services are provided on a Subscription basis. This means that the provision of the Services will auto-renew at the end of the current Subscription period,

unless you cancel it before the auto-renewal." RJN Exhibit 1 ¶ 1.2. A bold, underlined

hyperlink, "**Subscription Terms**" in the same paragraph links to a summary of key aspects of

the subscription, which repeats the disclosure. *Id.*; RJN Exhibit 2. Indeed, the terms of service

disclose the renewal terms throughout the agreement, including, additionally, in paragraphs 3.1-

3.2 and 5.3. RJN Exhibit 1. Thus, Nord explains the subscription nature of its service and the

renewal terms in a manner that is "obvious or plainly visible to a person reviewing a contract"

and does not "require that person to pore over the text of an agreement to find the particular

provision in a sea of text." *Perkins* at *2-3. RJN Exhibit 1. The contract terms comply with the

ARS.

     **The Offer**. Plaintiff's own allegations show that Nord also made the required renewal

disclosures in its *offer* of contract. Compl. ¶ 43. The checkout page presents the total price with

an asterisk. Compl. ¶ 43. The asterisk refers to the following text, on the same page:

> The introductory price is valid for the first term of your subscription. Then it will
> be automatically renewed for an additional 1-year term annually and you'll be
> charged the <u>then-applicable renewal price</u>. Savings granted by the introductory
> price are compared to the current renewal price, which is subject to change. But
> don't worry — we'll always send you a notification email prior to charging. <u>Learn
> more</u>

Compl. ¶ 43.[8] From the depiction in the Complaint, Nord's checkout page "can fairly be

characterized as free of visual clutter and containing limited text," as in *Perkins*, 2023 WL

3601489 at *4. And, as in *Perkins*, "[t]he page includes a short, four-sentence paragraph"

including the renewal terms in plain English. *Id.*

     Plaintiff acknowledges these elements of Nord's checkout page (Compl. ¶ 43), but he

---

[8] The Complaint includes an image of these terms stretched out to the width of a full browser
window and then compressed to an 8.5-inch page, making the text appear artificially small.
Compl. ¶ 43.

alleges that their *formatting* is deficient.  For example, he alleges that the renewal terms are not

"in larger type than the surrounding font," and that they are "colored light gray" and "not set off

from the surrounding text."  *Id*. ¶¶ 47-48, 50-51.  This is irrelevant: unlike other state

autorenewal statutes, and subsection (a)(4) of the ARS, which is not at issue, the North Carolina

legislature "did not specify a formatting requirement" for the renewal terms.  *Perkins*, 2023 WL

3601489 at *4.  Plaintiff's formatting allegations cannot support a claim for the alleged violation

of section (a)(1) of the ARS.  *Id.*

<strong><em>(ii)      Nord Adequately Disclosed Its Cancellation Terms.</em></strong>

Plaintiff admits that he canceled the automatic renewal before his subscription could be

renewed (Compl. ¶¶ 66-67), but he nevertheless alleges that Nord's cancellation disclosures are

inadequate under Section (a)(2) of the ARS.  *Id*. ¶¶ 46-52.  Here too, Plaintiff fails to state a

claim.

Section (a)(2) of the ARS requires sellers to "[d]isclose clearly and conspicuously how to

cancel the contract in the initial contract, contract offer, or with delivery of products or services".

As long as Nord made the required disclosure in one of those three places, it has complied with

the ARS.  Plaintiff alleges that the contract *offer* does not disclose the cancellation terms.

(Compl. ¶ 46)  But, as with the renewal disclosures, he does not address the contract *itself*,

which, in the terms of service, discloses not only *how* users may cancel, but the consequences of

cancellation: users who enroll on Nord's website, as Plaintiff allegedly did, "can [cancel] at any

time from your Nord Account," and "[c]anceled Subscriptions will not be refunded for the

unused part of the ongoing Service period."  *E.g.,* RJN Exhibit 1 ¶ 6.7.  Plaintiff also alleges that

the cancellation *process* itself was not sufficiently clear.  Compl. ¶¶ 58-61.  Putting aside the

ease with which Plaintiff himself canceled the renewal *(id.* ¶¶ 66-67), the allegations fail to state

a claim because the ARS does not address the cancellation *process*.[9]

### C.  Plaintiff Has Not Alleged A UDPTA Violation

The Court should dismiss Plaintiff's UDTPA claims under Rule 12(b)(6) because he fails to allege violations of the UDTPA under any standard, let alone the heightened pleading standard of Rule 9(b), under which a party must identify the "who, what, when, where, and how of the alleged fraud."  *Nemet Chevrolet,* 591 F.3d at 255; *Manoula,* 2022 WL 129322 at *3; *see Perkins*, 2023 WL 3601489 at *8 (dismissing plaintiff's UDTPA allegations as insufficient under Rule 8 where Plaintiff failed to allege actual "deception" or "concealment").  "[O]nly practices involving 'some type of egregious or aggravating circumstances are sufficient to violate the UDTPA.'"  *Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 164 (4th Cir. 2012), *as amended* (May 9, 2012).  For a claim to survive a motion to dismiss, the challenged practice must be deceptive ("capable of or tending to deceive") or unfair ("immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers").  *Waddell v. U.S. Bank Nat'l Ass'n*, 395 F. Supp. 3d 676, 685 (E.D.N.C. 2019).  "[A] mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under the UDTPA."  *Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102, 121 (4th Cir. 2021).  The only court to have considered UDTPA claims in the ARS context dismissed them for failure to state a claim.  *Perkins*, 2023 WL 3601489 at *7-9.  "She has merely alleged that relevant language was not conspicuously displayed in formats required by the ARS, causing her to be 'unaware' that renewal rates increased after a year.  This does not plausibly describe an egregious or aggravating circumstance."  *Id*. at *9.

---

[9] Plaintiff alleges that Nord "fails to provide written notice that the contract will automatically renew at least 15 days but no earlier than 45 days before the subscription automatically renews" (Compl. ¶ 5), but he does not allege a cause of action under section (a)(3) of the ARS, which governs such notices, presumably because he canceled his renewal subscription approximately two years before any such notice would have been due to him.  *Id*. ¶¶ 66-67.

14

As in *Perkins*, Plaintiff relies on alleged violations of the ARS as predicates for his UDTPA claim. Compl. ¶¶ 96-107. The closest he comes to identifying additional allegedly wrongful conduct is that "Defendants…[made] false representations or conceal[ed] the true risks of a NordSec subscription, and fail[ed] to engage in fair and upright business practices." *Id*. ¶ 99. Plaintiff does not identify allegedly "false representations" beyond those he alleges in support of his ARS claims, nor does he identify "risks" other than those associated with unlawful autorenewal, which he did not experience. In any event, an ARS violation is not automatically a violation of the UDTPA. *Perkins*, 2023 WL 3601489 at *7. And because renewal information required by the ARS was *accessible* to Plaintiff; there is no UDTPA violation even if, as alleged, the information was not "clear and conspicuous." *Perkins*, 2023 WL 3601489 at *8 (no UDTPA claim where allegations "go toward the formatting of readily available and easily discovered information, and do not describe a deception or the concealment of renewal policies."). Courts dismiss UDTPA claims where plaintiffs have alleged more egregious conduct, such as "conceal[ment] of the true cost of" a service. *Waddell*, 395 F. Supp. 3d at 685 (practice "not plausibly deceptive … or unfair" even where parties' agreement "does not expressly address whether [the defendant] can charge" the type of fee allegedly concealed).

Likewise, although Plaintiff alleges that the online cancellation process is "burie[d]" in the website (Compl. ¶ 59), and that it represents a "dark pattern" (*id*. ¶¶ 34-41), akin to a "roach motel" (*id*. ¶¶ 37, 58, 61), the process *as he describes it* is rather straightforward: customers "log into their customer account" if not already logged in, select "Billing," then select "Subscriptions" from between *two* options, then "Manage" next to the word "Auto-renewal" and then "Cancel auto-renewal." *Id*. ¶¶ 59-60. Even as alleged, this process is hardly deceptive, and it is certainly not "unethical" or "oppressive." After all, there must be *some* steps involved in canceling a

service, and the well-labeled steps that Plaintiff alleges are closer to intuitive than to oppressive. Indeed, it takes only four *mouse clicks* to *cancel*, according to Plaintiff, but *subscribing* in the first place requires entry of an email address, selection of a payment method, input of payment information, and a request to complete the purchase. *Id*. ¶¶ 43-51. The Court cannot infer from the allegations that the cancellation process is deceptive in violation of the UDTPA.

## III. Plaintiff Has Not Adequately Alleged His Tort Claims.

Plaintiff asserts claims for conversion (Count III), unjust enrichment (Count IV), and negligent misrepresentation (Count V). The predicate for these claims is that Defendants withdrew funds from his account without authorization (Compl. ¶¶ 112-13, 121) or violated the ARS (*id*. ¶ 126). The Court should dismiss all three for failure to state a claim.

### A. The Economic Loss Doctrine Bars Plaintiff's Tort Claims.

"North Carolina courts have strived to keep tort and contract law (including law related to warranties) within their separate spheres." *Kelly v. Georgia-Pac. LLC*, 671 F. Supp. 2d 785, 791 (E.D.N.C. 2009). "Accordingly, North Carolina courts have developed (and the Fourth Circuit has applied) the economic loss rule, which prohibits recovery for purely economic loss in tort when a contract … operates to allocate risk." *Id.* Unless a plaintiff alleges personal injury or damage to property of a third party, disputes arising out of a contractual relationship cannot be tried as torts, subject to limited exceptions not applicable here. *See N. Carolina State Ports Auth. v. Lloyd A. Fry Roofing Co.*, 240 S.E.2d 345, 350 (N.C. 1978). This rule "is based upon broad principles" and is not limited to any type of contract. *Severn Peanut Co., Inc. v. Indus. Fumigant Co.*, 807 F.3d 88, 94 (4th Cir. 2015). It applies to claims for conversion, *Legacy Data Access, Inc. v. Cadrillion, LLC*, 889 F.3d 158, 165-66 (4th Cir. 2018), and negligent misrepresentation, *Rountree v. Chowan Cnty.*, 796 S.E.2d 827, 831 (N.C. App. 2017), such as Plaintiff alleges.

Plaintiff acknowledges that he entered into a contract with Nord. *See, e.g.*, Compl. ¶¶ 63. Counts III-V assert common law torts based on the transaction underlying that contract. The economic loss doctrine bars these claims. *See e.g., N. Carolina State Ports Auth.*, 240 S.E.2d at 350. Because his only alleged harm is the loss of money under a contract, no exception to the economic loss doctrine applies. The Court should dismiss Counts III-V.

### B. Plaintiff Fails To State Claims For The Asserted Torts.

There are additional, independently sufficient reasons to dismiss Claims III-V.

"A tort claim of conversion requires showing some unauthorized act of control over property belonging to another." *United States v. J & E Salvage Co.*, 55 F.3d 985, 989 (4th Cir. 1995); *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 723 S.E.2d 744, 747 (N.C 2012) ("[T]wo essential elements of a conversion claim: ownership in the plaintiff and wrongful possession or conversion by the defendant"). Here, Plaintiff *authorized* a payment of $131.76 from his credit card to Nord for an initial two-year subscription, and he was promptly issued a receipt confirming as much. Compl. ¶¶ 54, 64. "In other words, Plaintiff voluntarily relinquished the [$131.76] from his [bank account] knowing full well he would never see those particular funds again." *Hobbs v. St. Martin*, 198 F. Supp. 3d 530, 539 (D. Md. 2016) ("Plaintiff's conversion claim fails because he has not alleged that he was entitled to—or had any expectation of—restoration of the particular funds that he agreed to lend Hagen."), *order vacated on other grounds,. Hobbs v. Martin*, No. CV JKB-16-749, 2017 WL 105675, at *1 n.1 (D. Md. Jan. 11, 2017); *see also Wooton v. CL, LLC,* No. 2:09-CV-34-FL, 2010 WL 3767308, at *8 (E.D.N.C. Sept. 27, 2010), aff'd, 504 F. App'x 220 (4th Cir. 2013) ("Though plaintiff alleges that he did not receive the benefit of his bargain, he voluntarily paid a sum of money pursuant to a contract in exchange for an object of value. Whether the object of value … was worth

plaintiff's payment is not the subject of an action for conversion."). Nord did not take "wrongful possession" of the funds that Plaintiff voluntarily transferred to it pursuant to the contract that he admits existed between them. The Court should dismiss his conversion claim.

Unjust enrichment is a quasi-contract theory available only when there is no contract. *McManus v. GMRI, Inc.*, No. 3:12-cv-009-DCK, 2012 WL 2577420, at *10 (W.D.N.C. July 3, 2012) ("[B]ecause all of the facts pleaded by Plaintiff allege the existence and validity of a contract between the parties, Plaintiff's claim for unjust enrichment must fail as a matter of law."); *Booe v. Shadrick*, 369 S.E.2d 554, 556 (N.C. 1988) ("If there is a contract between the parties the contract governs the claim and the law will not imply a contract."). There is a subscription contract here, and Plaintiff did not plead his unjust enrichment claim in the alternative. Compl. ¶¶ 117-122. Thus, there is no cause of action for unjust enrichment. *Perkins*, 2023 WL 3601489 at *9 (dismissing unjust enrichment claim where it was "not pleaded in the alternative and [sought] relief based on activities already governed by contract").

To state a claim for negligent misrepresentation, Plaintiff must allege that he (1) justifiably relied (2) to his detriment (3) on information prepared without reasonable care (4) by a person who owed the relying party a duty of care. *Hudson-Cole Dev. Corp. v. Beemer*, 511 S.E.2d 309, 313 (N.C. App. 1999). Like his UDTPA claim, Plaintiff's negligent misrepresentation claims fails under Rule 9(b)'s heightened pleading standard. *Manoula, LLC*, 2022 WL 129322 at *4. Plaintiff merely alleges that "Defendants failed to disclose" and "concealed" material facts "concerning their subscription practices including" by failing to comply with the ARS. Compl. ¶¶ 126, 130-31. But Plaintiff does not describe the "concealed" information that he claims to have "justifiably relied" on "to his detriment." Nor does the requisite duty of care arise from an arm's-length transaction between counterparties to a contract.

*See Rountree* 796 S.E.2d at 832. Even if it did, Plaintiff does not allege "that he was denied the opportunity to investigate, or that he could not have learned the true facts through reasonable diligence," which is fatal to his claim. *Id*.; *see also Pike v. Wells Fargo Bank, N.A.,* No. 7:20-CV-00219-M, 2022 WL 1196694, at *8 (E.D.N.C. Apr. 21, 2022) (dismissing negligent misrepresentation claim for lack of justifiable reliance where Plaintiff was not diligent in investigating the facts). "Finally, negligent omissions … as opposed to negligent misrepresentations cannot form the basis of a claim for negligent misrepresentation under North Carolina law." *Bonham v. Wolf Creek Acad.*, 767 F. Supp. 2d 558, 570 (W.D.N.C. 2011). Thus, there is no claim for negligent misrepresentation here.

## IV. The Court Does Not Have Personal Jurisdiction Over The Non-Contracting Defendants.

Plaintiff bears the burden of establishing personal jurisdiction over non-resident defendants. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). "[T]wo conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Id*. at 396. Because North Carolina's "long-arm statute extends personal jurisdiction to the limits of the Fourteenth Amendment's Due Process Clause, the statutory inquiry merges with the constitutional inquiry." *DWM Int'l, Inc. v. Cristaux, Inc.*, No. 3:23-cv-00351, 2023 WL 8587271, at *2 (W.D.N.C. Dec. 11, 2023) (J. Bell) (internal marks omitted). Thus, Plaintiff must establish that defendant has "minimum contacts" with the forum such that the assertion of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945) (internal marks omitted). Plaintiff has not met his burden.

## A. There Is No General Jurisdiction Over Any Defendants.

General jurisdiction over a foreign corporation exists only when its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *see also Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). After *Daimler*, a corporation is generally "at home" only where it is incorporated or has its principal place of business. *See Daimler*, 571 U.S. at 127.

There is no general jurisdiction over any defendant here. NordSec Ltd is an English company with its principal place of business in London, England; NordSec B.V. is a Netherlands company with its principal place of business in Amsterdam, the Netherlands; Nord Security Inc. is a Delaware company with its principal place of business in Lewes, Delaware; Nord is a Panama company with its principal place of business in Amsterdam, the Netherlands; and Tefincom is a Panama company with its principal place of business in Panama City, Panama. Baltramiejuniene Decl. ¶ 3; Sinkeviciene Decl. ¶ 3; Gorelcionkiene Decl. ¶ 3; Kasulis Decl. ¶ 3; Gatsaniuk Decl. ¶ 3. These entities had, and have, no employees, contractors, offices, or property in North Carolina. Sinkeviciene Decl. ¶ 9; Gorelcionkiene Decl. ¶ 9; Kasulis Decl. ¶ 9; Gatsaniuk Decl. ¶ 9. The unsupported allegation that Defendants "conduct substantial business in North Carolina" (*id.* ¶ 14) is not sufficient to establish general jurisdiction. *Lianyungang FirstDart Tackle Co. v. DSM Dyneema B.V.*, 871 F. Supp. 2d 482 (E.D.N.C. 2012) (bare allegations that defendants had significant contacts with the state are insufficient to establish jurisdiction when contradicted by defendants' specific denials).

## B. There Is No Specific Jurisdiction Over The Non-Contracting Defendants.

To establish personal jurisdiction, Plaintiff must allege facts showing that: (1) the defendant purposefully availed itself of the privilege of conducting activities in the forum state;

(2) the plaintiff's claims arise out of the activities directed at the forum state; and (3) the exercise of personal jurisdiction would be constitutionally reasonable. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal marks omitted). Plaintiff has not met his burden of establishing specific personal jurisdiction.

### (i) Plaintiff Has Alleged No Facts Establishing Purposeful Availment By The Non-Contracting Defendants.

When analyzing purposeful availment, courts in the Fourth Circuit consider various nonexclusive factors, including:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 198-99 (4th Cir. 2018) (citing *Consulting Eng'rs Corp.*, 561 F.3d at 278).

Plaintiff does not allege facts showing that the Non-Contracting Defendants maintained offices, agents, or property in North Carolina; or how the Non-Contracting Defendants reached into North Carolina to solicit or initiate business; or that they deliberately engaged in significant or long-term business activities here; or that they made any in-person contact with any resident of this state. Nor does he allege any communications or contract with the Non-Contracting Defendants. He relies solely on conclusory allegations that Defendants are alter egos and "have sufficient minimum contacts with this state, and otherwise purposely avail themselves of the

privileges of conducting business in North Carolina by marketing and selling products and services in North Carolina." Compl. ¶ 14. That is insufficient. The Non-Contracting Defendants have no employees or agents in North Carolina, and they do not maintain offices or property there. Sinkeviciene Decl. ¶ 9; Gorelcionkiene Decl. ¶ 9; Kasulis Decl. ¶ 9; Gatsaniuk Decl. ¶ 9. They do not ship products into North Carolina or market or advertise retail consumer VPN or related services there. Sinkeviciene Decl. ¶¶ 10-14; Gorelcionkiene Decl. ¶¶ 10-14; Kasulis Decl. ¶¶ 10-11; Gatsaniuk Decl. ¶¶ 10-11. And Plaintiff's contract is with Nord only. Baltramiejuniene Decl. ¶ 3; RJN Exhibit 1. Plaintiff has not established purposeful availment by the Non-Contracting Defendants. *See IMO Indus., Inc. v. Seim S.R.L.*, No. 3:05-cv-420-MU, 2006 WL 3780422, at *1 (W.D.N.C. Dec. 20, 2006) (plaintiff "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist").

### (ii) *Plaintiff's Claims Do Not Arise From Or Relate To The Non-Contracting Defendants' Contacts With North Carolina, If Any.*

The Non-Contracting Defendants did not enroll Plaintiff in any services, charge him for any services, or provide any services to him. Sinkeviciene Decl. ¶ 3; Gorelcionkiene Decl. ¶ 3; Kasulis Decl. ¶ 3; Gatsaniuk Decl. ¶ 3. Thus, even if the Non-Contracting Defendants did have contacts with North Carolina, and Plaintiff alleges none, there would be no jurisdiction over them because Plaintiff's claims could not "arise from" those contacts. *See Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 132 (4th Cir. 2020) (no personal jurisdiction where Plaintiff's claims do not arise from forum contacts); *White by & through White v. Aetna Life Ins. Co.*, 519 F. Supp. 3d 253 (W.D.N.C. 2021).

### (iii) The Exercise Of Jurisdiction Over The Non-Contracting Defendants Would Be Unreasonable.

In the absence of any activity by the Non-Contracting Defendants in North Carolina giving rise to Plaintiff's claims, the exercise of jurisdiction against the Non-Contracting Defendants would be unreasonable. *See DP Envtl. Srvs., Inc. v. Bertlesen*, 834 F. Supp. 162, 166-67 (M.D.N.C. 1993) (no jurisdiction against alleged alter ego company where Plaintiff failed to demonstrate any of the alter ego factors, failed to establish purposeful availment, and extending jurisdiction would be "fundamentally unfair"). In evaluating whether jurisdiction is reasonable, the Fourth Circuit considers: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies. *Consulting Eng'rs*, 561 F.3d at 278-79. Because they are foreign parties that did not direct any actions at North Carolina giving rise to Plaintiff's claims, the forum state's interest in adjudicating disputes against the Non-Contracting Defendants is low, and the burden on them of having to defend would be at its maximum. Their absence will not burden Plaintiff, who may proceed against Nord, if he has standing and has stated a viable claim (he has not). Because it would be unreasonable for the Court to exercise jurisdiction over the Non-Contracting Defendants, the Court should dismiss.

### C. Defendants Are Not Alter Egos Of Each Other.

Because Plaintiff cannot establish general or specific jurisdiction over the Non-Contracting Defendants, he asserts that the Defendants are alter egos of each other, and that, as a result, jurisdiction over one automatically confers jurisdiction over the rest. Compl. ¶¶ 25-30. Plaintiff's allegations in this regard are on "information and belief" (or irrelevant), and they

effectively just parrot the elements with no supporting facts.

The "[a]pplication of the [alter ego] doctrine must be exercised reluctantly and cautiously. *Bertlesen*, 834 F. Supp. 162 at 165–66. "[I]t is generally the case that the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005). The plaintiff must show that "the businesses are parts of the same whole." *Wyatt v. Walt Disney World Co.*, 565 S.E.2d 705, 711 (N.C. App. 2002). Plaintiff must allege facts showing that: (1) one defendant had complete domination over another, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) such control was used to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and (3) the control and breach of duty proximately caused the injury or unjust loss complained of. *Jacobs v. Stein*, No. 3:16-cv-00768-MOC-DSC, 2017 WL 1017125, at *5 (W.D.N.C. Mar. 15, 2017). Factors to examine include gross undercapitalization of the subservient corporation; failure to observe corporate formalities; nonpayment of dividends; siphoning of the corporation's funds by the dominant corporation; non-functioning of officers and directors; absence of corporate records; and the fact that the corporation is merely a facade for the operation of the dominant stockholder or stockholders. *Id.* at *5. "The burden of establishing a basis for disregarding a corporate entity and applying the alter ego doctrine rests on the party asserting the claim." *Bertlesen*, 834 F. Supp at 165.

Because Plaintiff alleges no facts from which the Court could infer that any one defendant had "complete domination" over the other, the Court should reject his alter ego theory of jurisdiction. *Stein*, 2017 WL 1017125 at *6 (no alter ego where plaintiff failed to allege facts

establishing "complete domination"); *WLC, LLC v. Watkins*, 454 F. Supp. 2d 426 (M.D.N.C. 2006) (refusing to accept conclusory allegations that a subsidiary was an agent of its parent).

All Defendants observe corporate formalities. Sinkeviciene Decl. ¶¶ 4-8; Gorelcionkiene Decl. ¶¶ 4-8; Kasulis Decl. ¶¶ 4-8; Gatsaniuk Decl. ¶¶ 4-8. There is no comingling of funds or absence of corporate records. *Id*. The Non-Contracting Defendants are not mere façades for the operation of Nord, or vice versa. *See Krausz Indus. Ltd. v. Smith-Blair, Inc*., 188 F. Supp. 3d 545, 557 (E.D.N.C. 2016) (no alter ego where the "[p]laintiff has not articulated with reasonable particularity the requisite disregard of corporate formalities"). Plaintiff alleges that all Defendants are "closely related in ownership" (Compl. ¶ 28), but, even if true, that would not establish alter ego jurisdiction. *See Bertlesen*, 834 F. Supp. at 165-66 ("It is not enough that the stock in two corporations is held by the same individuals and that those two corporations share the same officers and directors."). Nor does the fact that emails with a "nordsec.com" domain appear on the Nord website. Compl. ¶ 29; *see Krausz Indus. Ltd.*, 188 F. Supp. 3d at 557 (no alter ego based on same email addresses). The Non-Contracting Defendants had nothing to do with Plaintiff's subscription or any alleged injury from it. *Stein*, 2017 WL 1017125 at *5.

Defendants are not alter egos of each other and there is no personal jurisdiction over any one of them based on the alleged conduct of another. *Bertlesen*, 834 F. Supp. at 166-167 (no alter ego jurisdiction where "Plaintiff has not demonstrated any of the [alter ego] factors … [or] some element of injustice or fundamental unfairness"). The Court should dismiss the Non-Contracting Defendants for lack of personal jurisdiction.

## CONCLUSION

Based on these uncurable jurisdictional and pleading defects, Plaintiff's claims should be dismissed, with prejudice and without leave to amend, as to all Defendants.

Dated: July 3, 2024

Respectfully submitted,

**MᶜGᴜɪʀᴇWᴏᴏᴅꜱ LLP**

*/s/ Jodie Herrmann Lawson*
Jodie Herrmann Lawson
NC State Bar No. 42900
Jessica O'Brien
NC State Bar No. 56679
201 North Tryon Street, Suite 3000
Charlotte, NC 28202
Telephone: (704) 343-2329
Facsimile: (704) 343-2300
jlawson@mcguirewoods.com
jobrien@mcguirewoods.com

**FENWICK & WEST, LLP**
Jedediah Wakefield
Ethan Thomas
Samuel Sahagian
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 650.938.5200
Email: jwakefield@fenwick.com
ethomas@fenwick.com
ssahagian@fenwick.com

Adam Gahtan
902 Broadway, 18th Floor
New York, NY 10010
Telephone: 212.430.2600
Facsimile: 650.938.5200
Email: agahtan@fenwick.com

*Counsel for Defendants Nordvpn S.A., Nord Security Inc., NordSec Ltd, NordSec B.V., and Tefincom S.A.*

## CERTIFICATE REGARDING USE OF ARTIFICIAL INTELLIGENCE

I certify that: (1) no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and (2) every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

*/s/ Jed Wakefield*
Jed Wakefield

**CERTIFICATE OF SERVICE**

I certify that on July 3, 2024, I electronically filed Defendants' Memorandum in Support of Motion to Dismiss Plaintiff's Complaint with the Clerk of Court using the CM/ECF system, which automatically provides electronic notice to all counsel of record.

/s/ Jodie Herrmann Lawson
Jodie Herrmann Lawson
NC State Bar No. 42900

*Counsel for Defendants Nordvpn S.A., Nord Security Inc., NordSec Ltd, NordSec B.V., and Tefincom S.A.*