UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| DENNIS HANSCOM, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>  vs.<br><br>NORDSEC LTD., NORDSEC B.V., NORDVPN S.A., NORD SECURITY INC., and TEFINCOM S.A. d/b/a NORDVPN,<br><br>        Defendants. | **CASE NO. 3:24-CV-00277-KDB-DCK** |

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................1

ARGUMENT ....................................................................................................................1

    I.     Plaintiff Lacks Article III Standing. ..........................................................1

    II.    Plaintiff Fails To State A Claim Under The ARS. ....................................3

    III.   Plaintiff Fails To State A Claim Under The UDTPA. ..............................5

    IV.   Plaintiff Fails To State Claims For Conversion And Unjust Enrichment. ................6

    V.    There Is No Personal Jurisdiction Over The Non-Contracting Defendants. ...........8

    VI.   The Court Should Dismiss With Prejudice. ...........................................11

CONCLUSION ................................................................................................................11

CERTIFICATE REGARDING ARTIFCIAL INTELLIGENCE ...................................13

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Apex Tool Grp. LLC v. Cyderes, LLC*,
  No. 3:23-cv-00236 (KDB) (SCR), 2023 WL 7490146 (W.D.N.C. Nov. 13, 2023)..................7

*Avanti Hearth Prods., LLC v. Janifast, Inc.*,
  No. 10-cv-000019 (FDW), 2010 WL 3081371 (W.D.N.C. 2010)............................9

*Crescent Univ. City Venture, LLC v. Trussway Mfg., Inc.*,
  376 N.C. 54 (2020) ....................................................................7

*Foodbuy, LLC v. Gregory Packaging, Inc.*,
  987 F.3d 102 (4th Cir. 2021) ..........................................................6

*Kawa Orthodontics, LLP v. Secretary, U.S. Dept. of the Treasury*,
  773 F.3d 243 (11th Cir. 2014) .........................................................2

*Krausz Indus. Ltd. v. Smith-Blair, Inc.*,
  188 F. Supp. 3d 545 (E.D.N.C. 2016)...............................................10, 11

*Legacy Data Access, Inc. v. Cadrillion, LLC*,
  889 F.3d 158 (4th Cir. 2018) ..........................................................7

*McManus v. GMRI, Inc.*,
  No. 3:12-cv-009 (DCK), 2012 WL 2577420 (W.D.N.C. July 3, 2012) ....................8

*Perkins v. New York Times Co.*,
  No. 22-cv-5202 (PKC), 2023 WL 3601489 (S.D.N.Y. May 23, 2023)................4, 5

*Pfizer Inc. v. Synthon Holding, B.V.*,
  386 F. Supp. 2d 666 (M.D.N.C. 2005) .................................................10

*Price v. Greensboro News & Rec., LLC*,
  No. 1:19-cv-960 (CCE), 2020 WL 586674 (M.D.N.C. Feb. 6, 2020)...........8, 9, 11

*Rhue v. Rhue*,
  658 S.E.2d 52 (N.C. App. 2008).......................................................9

*Silicon Knights, Inc. v. Epic Games, Inc.*,
  No. 5:07-cv-275-D (JEG), 2011 WL 1134453 (E.D.N.C. Jan. 25, 2011) ...............7

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 .........................................................................1

*United States ex rel. Carson v. Manor Care, Inc.*,
  851 F.3d 293 (4th Cir. 2017) .........................................................11

*Van v. LLR, Inc.*,
  962 F.3d 1160 (9th Cir. 2020) .........................................................2

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Varnell, Struck & Assocs., Inc. v. Lowe's Companies, Inc.*,
   No. 5:06-cv-68, 2008 WL 1745880 (W.D.N.C. Apr. 11, 2008) ...................................................... 5

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ...................................................... 5

*Vigus v. Milton A. Latta & Sons Dairy Farms, Inc.*,
   676 S.E.2d 669 ...................................................... 7

*Viveros v. Audible, Inc.*,
   No. 23-cv-00925 (JLR), 2023 WL 6960281 (W.D. Wash. Oct. 20, 2023) ...................................................... 3

*Viza Elecs., LLC v. Paradigm Clinical Rsch. Inst., Inc.*,
   No. 3:22-CV-49 (MOC) (DCK), 2022 WL 4459836 (W.D.N.C. Sept. 23, 2022) ...................................................... 5

*Walker v. White*,
   609 F. Supp 2d 529 (W.D.N.C. 2009) ...................................................... 9

*Wheeler v. BMW of N. Am. LLC*,
   534 F. Supp. 3d 527 (W.D.N.C. 2021) ...................................................... 7

*Wilder v. Hobson*,
   101 N.C. App. 199 (1990) ...................................................... 9

**STATUTES AND RULES**

N.C.G.S. § 75-41(a) ...................................................... 1

North Carolina ARS ...................................................... *passim*

INTRODUCTION

Two fundamental facts doom Plaintiff's Amended Complaint, and he admits them both: (1) his subscription to Nord online services never renewed, so that he never paid a renewal fee, and (2) he was refunded his entire initial subscription fee, a fact that Plaintiff somehow omitted from his original complaint. In the absence of a renewal, Plaintiff has no standing to assert claims based on alleged violations of North Carolina's Automatic *Renewal* Statute. And in light of the refund, there is no cognizable injury for any of Plaintiff's claims, regardless of whether they depend on the alleged ARS violation. Plaintiff also fails to overcome additional, independently sufficient reasons to dismiss each claim, but there is no escaping these basic problems.

ARGUMENT

I. **Plaintiff Lacks Article III Standing.**

Nord has shown that Plaintiff cannot have suffered a concrete injury under the ARS because the ARS concerns injuries associated only with subscription *renewals* and, as Plaintiff admits, his subscription never renewed and he never paid a renewal fee. MTD at 8-10. Plaintiff lacks standing for his other claims both because they depend on ARS violations, and, separately, because Plaintiff's *initial* subscription fee was refunded. *Id*. at 9-10. Finally, this Circuit has not recognized Plaintiff's sole alleged injury, lost time value of refunded money. *Id*. at 10.

Plaintiff argues that, "[r]egardless of whether what happened to Plaintiff is a 'renewal' under the ARS, the ARS applies where a 'contract automatically renews unless the customer cancels the contract.'" Opp. at 6 (citing N.C.G.S. § 75-41(a)). But for Article III standing, the question is not whether a law "applies" in the abstract, but whether a plaintiff has suffered a concrete injury traceable to a *violation* of the law. Thus, in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 422-30, the Supreme Court held that plaintiffs whose credit reports were *not* disclosed to third parties had no standing to sue the reporting agency even if there *had* been a violation of the law.

1

In a footnote, Plaintiff describes *Trans Union* as "inapposite," but without explanation. Opp. at 8 n.5. In fact, precisely as in *Trans Union*, even if Nord had violated the ARS (it did not), there is no injury traceable to that violation in the absence of a renewal. Plaintiff cites no case, from any jurisdiction, in which a non-renewed plaintiff had standing under an autorenewal law.

Plaintiff next argues that the short delay in receiving a refund for his initial subscription purchase (which again, was not a renewal) creates standing. But no Fourth Circuit authority has recognized lost time value of money that was refunded as a qualifying concrete injury, and courts both in and outside of this Circuit have dismissed such claims for lack of standing. *Id*. Plaintiff again argues that these cases are "inapposite," but again without showing why. Opp. at 5-7. In fact, those cases are on point, and, in any event, there is no reason for this Court to follow cases from outside this Circuit, as Plaintiff urges it to do. Opp. at 7. Even if it did, moreover, the Court should dismiss, because those cases required far more fact-specific allegations,[1] and far greater a loss,[2] than Plaintiff offers here. His Amended Complaint does not allege that he was, in fact, deprived of money for any period. He alleges only that his credit card was charged for $131.76, and he admits that the amount was credited back to him 55 days later. FAC ¶¶ 79, 87. He also does not allege that he paid the bill that included the subscription fee (i.e., that he lost the use of his *own* money, *see Van*, 962 F.3d at 1164), that he was unable to invest the money, or that he lost interest on it. Plaintiff recognizes these deficiencies, inviting the Court to let him amend (yet

---

[1] *E.g.*, *Kawa Orthodontics, LLP v. Secretary, U.S. Dept. of the Treasury*, 773 F.3d 243, 246 (11th Cir. 2014) (plaintiff failed to allege "specific plans to invest its money into an interest-bearing asset").
[2] *E.g., Van v. LLR, Inc.*, 962 F.3d 1160, 1162 (9th Cir. 2020) (standing established based on "the loss of a significant amount of money (over $500) for a substantial amount of time (months with respect to some purchases, over a year with respect to others)"). Here, crediting Plaintiff's allegations in their entirety, and assuming that Plaintiff paid his credit card bill on the same day that he purchased his subscription—which is not plausible and has not been pled—he would have lost the use of $131.76 for no more than 55 days, an utterly *de minimis* loss.

again). Opp. at 7, n.2. The Court should decline that invitation.

## II. Plaintiff Fails To State A Claim Under The ARS.

By reference to Plaintiff's allegations, including screenshots, Nord has shown that its disclosures about autorenewal and cancellation are clear and conspicuous for purposes of the ARS. MTD at 12-17. Plaintiff's arguments in opposition do not overcome his own pleadings, and he is wrong on the law.

First, for the same reasons Plaintiff lacks Article III standing (no renewal), he cannot show injury caused by an ARS violation. He is thus wrong to argue he was "[i]njured by" Nord's conduct. Opp. at 2. Plaintiff cites *Viveros v. Audible, Inc.*, No. 23-cv-00925 (JLR), 2023 WL 6960281, at *6-7 (W.D. Wash. Oct. 20, 2023), in support (Opp. at 8), but that case makes *Nord's* point. The court held that one plaintiff had standing because she was *unable* to cancel a subscription, but, on otherwise identical allegations, that the other plaintiff, who *did* cancel, *lacked* standing. *Viveros*, 2023 WL 6960281, at *6-7. Here, Plaintiff *cancelled* his renewal term before it happened, as he admits (FAC ¶ 81-82), and he also got a full refund of his *initial* term payment. MTD at 2-3; FAC ¶ 87.[3]

Second, Plaintiff argues that Nord's autorenewal and cancellation disclosures were inadequate, because, e.g., they were provided only by "'tiny, inconspicuous hyperlinks'"; made in a "mishmash" "scattered across" a longer document; and not highlighted or otherwise distinguished from surrounding text. Opp. at 9-11. But, unlike laws in other states, the relevant sections of the ARS do not prescribe disclosure *format*. MTD at 12-14. Thus, in the only decision

---

[3] Plaintiff argues that he is more like the plaintiff in *Viveros* who was *unable* to cancel, because he was not refunded for the *initial* subscription term when he cancelled the *renewal* term. Opp. at 8-9. But Nord repeatedly, clearly, and conspicuously disclosed that cancellation applied to *renewal* terms only and would not result in refunds for amounts already paid for current subscriptions. Nord detailed these disclosures in its opening brief. MTD at 3-7, 14-15; Dkts. 56-2, 56-3.

3

addressing the ARS, the court dismissed a claim based on allegations related to "the conspicuousness of the text," holding that, under North Carolina law, it was sufficient that the disclosure was "obvious or plainly visible." *Perkins v. New York Times Co.*, No. 22-cv-5202 (PKC), 2023 WL 3601489, at *4 (S.D.N.Y. May 23, 2023). This is presumably why Plaintiff relies entirely on *California's* stricter, more prescriptive law for his argument. Opp. at 9-10.

Here, as in *Perkins*, Nord's disclosures were sufficient under the ARS. Indeed, Plaintiff concedes that Nord disclosed the automatic renewal terms at least *six different times*. Opp. at 10. Such repetition alone ensures that the disclosure is "clear and conspicuous" under the ARS. *See Perkins*, 2023 WL 3601489, at *4 (no violation where defendant "twice advises that a subscription will automatically renew until it is canceled"). As to the hyperlinks, the Court need only consult the screenshots in the Amended Complaint to see that Nord presented them at the time of enrollment, on the checkout page, "free of visual clutter," and along with further disclosure of the renewal terms in plain English. MTD at 13-14; FAC ¶¶ 53, 59. Nor are any disclosures "buried" in the contract. Opp. at 4. They are at the very top. *See* Dkt. 56-2 § 1.2; Dkt. 56-3 ¶¶ 1-4.

Third, Plaintiff argues that Nord's disclosures are incomplete because they do not show the "cost or length of the autorenewal" or provide sufficient guidance for "how to cancel." Opp. at 11. In fact, Nord *did* disclose the cost and lengths of its different subscription plans, including on the pricing page (FAC ¶ 52), the checkout screens (FAC ¶ 53), the email receipt (FAC ¶ 67), and the user billing page (FAC ¶ 70). FAC ¶ 53. And, again, Plaintiff had no trouble canceling. FAC ¶¶ 81-82. Finally, Plaintiff argues that Nord violates the ARS by "giving consumers the impression that they will be charged only after a subscription ends rather than 14 days prior to expiration." Opp. at 11. Not so. In the Subscription Terms (Dkt. 56-3), Nord expressly discloses that it charges for renewal 14 days before expiration. Plaintiff points to no contrary disclosure.

4

### III. Plaintiff Fails To State A Claim Under The UDTPA.

Plaintiff concedes that a UDTPA claim fails unless he can allege facts amounting to "substantial aggravating and egregious circumstances." Opp. at 12.[4] That threshold is high and, as the court in *Perkins* held, UDTPA claims based on the ARS do not meet it. MTD at 15-16. Plaintiff tries to distinguish *Perkins* on grounds that the plaintiff in that case failed to identify the unethical or oppressive conduct (Opp. at 15), but plaintiff in *Perkins* tried and failed with the same "dark pattern" playbook as Plaintiff uses here. *Perkins*, 2023 WL 3601489, at *7-9.[5]

For all his rhetoric—"roach motel," "dark patterns," "true risks"—Plaintiff's allegations do not remotely make out a case of egregious circumstances. They are quibbles about refund terms and cancellation procedures in a consumer contract. It is not deceptive, and certainly not egregious, for a provider to require a consumer to *ask* for a refund, or to limit a refund period to 30 days. Nor is it deceptive or egregious for a provider of a *renewing* subscription service to distinguish, for cancellation/refund purposes, between initial and renewal terms, especially when the provider discloses, over and over (six times, by Plaintiff's admission), that cancellation applies

---

[4] Plaintiff argues that claims under the UDTPA need not meet the pleading standard under Federal Rule 9(b). Opp. at 13. But the cases he cites address whether the application of *state* rule 9(b) applies in certain matters brought before a *state* court. When a plaintiff brings an action sounding in fraud in federal court, then Rule 9(b)'s particularity requirements apply. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).

[5] Plaintiff also argues that the "inequitable assertion of power and position" can qualify as an aggravating factor, but the case he cites explains that unequal bargaining power in a consumer contract "does not constitute an unfair act or practice under the UDTPA." *Varnell, Struck & Assocs., Inc. v. Lowe's Companies, Inc.*, No. 5:06-cv-68, 2008 WL 1745880, at *8 (W.D.N.C. Apr. 11, 2008). (If the law were otherwise, all consumer contracts could violate the UDTPA.) Plaintiff next argues that deception in the formation of the contract might constitute substantial aggravating circumstances. Opp. at 12-13 (citing *Viza Elecs., LLC v. Paradigm Clinical Rsch. Inst., Inc.*, No. 3:22-CV-49 (MOC) (DCK), 2022 WL 4459836, at *6 (W.D.N.C. Sept. 23, 2022)). *Viza* is useful mostly to show how truly egregious circumstances must be to support a UDTPA claim: an allegedly false assurance induced Plaintiff "to swiftly deposit *$26 million* to obtain *desperately needed* supplies." *Id* (emphasis added). Here, Plaintiff does not assert fraudulent inducement, and he *dropped* his original claim even for misrepresentation, presumably because, as Nord showed, he could not identify a single false statement.

to the renewal term only.

Nor was Nord's subscription plan a "negative option," which is the misrepresentation at the heart of Plaintiff's allegations. Opp. at 15-16 (citing FAC ¶¶ 5-17). A contract offer involves a negative option when, as Plaintiff describes it, a purchase results from a customer's "failure to take an affirmative action to reject a product or service." FAC ¶ 5. That is not what happened here. As is clear from his Amended Complaint, Plaintiff paid for his subscription up front and exactly as expected—when he selected a plan and entered payment information for an immediately available initial subscription. MTD at 16-17; FAC ¶ 53, 59. Plaintiff's purchase was the result of his affirmative decision to pay, not his "failure to act." He then had 30 days to ask for a refund for his initial term, and longer to cancel his renewal term. MTD at 16-17; FAC ¶ 63; Dkt. 56-2 §§ 6.2-6.3. There is no negative option there, either: limited-time refund offers are standard and assume that the purchase has already occurred (hence a *refund*).

And, as it bears repeating, Plaintiff *did* cancel his renewal term, and so never paid for a renewal, *and* he got a refund for his initial term.

**IV. Plaintiff Fails To State Claims For Conversion And Unjust Enrichment.**

Because this dispute concerns a commercial transaction governed by a contract, and Plaintiff alleges only economic loss, the economic loss rule (ELR) bars his law tort claims. MTD 17-18.

Plaintiff argues that the ELR does not apply when defendant owes a duty to Plaintiff that is distinct from the contract. Opp. at 16-17. The cases he cites do not state anything like so broad an exception, nor could they if the ELR has any meaning. In *Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102, 121 (4th Cir. 2021), the court held that the ELR did not bar a claim *under UDTPA*, because the *UDTPA* created a separate cause of action. *Id. at* 121-22. Here, Nord moves to dismiss Plaintiff's conversion and unjust enrichment claims, *not* his ARS or UDTPA claims, on

6

ELR grounds. Whatever duty those statutes might create (if any), no case holds that they would exempt claims brought under *different* theories (e.g. conversion) from the ELR. Plaintiff also argues that the ELR does not apply when a plaintiff sues for fraud independent from and in the inducement of the contract. Opp. at 16-17.[6] But Plaintiff has *not* alleged claims for common law fraud; indeed, he *dropped* his earlier claim for misrepresentation. Unsurprisingly, Plaintiff cites no cases in which conversion or unjust enrichment claims were exempt from the ELR.[7] Finally, Plaintiff argues that the ELR applies only to claims for negligence. The Fourth Circuit disagrees. *Legacy Data Access, Inc. v. Cadrillion, LLC*, 889 F.3d 158, 164-65 (4th Cir. 2018) ("the economic loss rule applies and bars Plaintiffs' conversion claim"); *see also Crescent Univ. City Venture, LLC v. Trussway Mfg., Inc.*, 376 N.C. 54, 59 (2020) (North Carolina Supreme Court has "never allowed *a tort action*" for simple failure to perform under a contract (emphasis added)).

Even without the ELR, Plaintiff fails to state a claim. As to conversion, Plaintiff argues the Court should focus on "deprivation," not acquisition of Plaintiff's $131.76. Opp. at 17-18. But even if Plaintiff had pled deprivation—he did not, *see* Section I, above—Nord was in possession of Plaintiff's money *legally* at all times: Plaintiff transferred the money to Nord in exchange for a subscription that Nord provided, and, because Plaintiff failed to ask for a refund within the 30-day period, Nord was within its contractual rights to retain his payment. MTD at

---

[6] *Wheeler v. BMW of N. Am. LLC*, 534 F. Supp. 3d 527, 534 (W.D.N.C. 2021) (fraudulent concealment in the inducement of the contract and UDTPA claims not barred by ELR); *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-cv-275-D (JEG), 2011 WL 1134453, at *12 (E.D.N.C. Jan. 25, 2011) (fraud and negligent misrepresentation in the inducement of the contract not barred by ELR); *Vigus v. Milton A. Latta & Sons Dairy Farms, Inc.*, 676 S.E.2d 669 (Table), at *5 n.3 (N.C. App. 2009) (unpublished disposition) (fraud and negligence claims outside the scope of a contractual relationship not barred by ELR).
[7] Contrary to Plaintiff's argument (Opp. at 17 n.11), the court in *Apex Tool Grp. LLC v. Cyderes, LLC*, No. 3:23-cv-00236 (KDB) (SCR), 2023 WL 7490146, at *6 (W.D.N.C. Nov. 13, 2023), did not consider whether the ELR applies to unjust enrichment claims.

18-19. And, again, Plaintiff got his refund anyway. Plaintiff concedes that unjust enrichment claims cannot proceed when there is a contract between the parties, but he argues that the Court should construe his claim as pled "in the alternative." Opp. 18-19. Where, as here, all pleaded facts allege the existence of an enforceable contract, a "claim for unjust enrichment must fail as a matter of law." *McManus v. GMRI, Inc.*, No. 3:12-cv-009 (DCK), 2012 WL 2577420, at *10 (W.D.N.C. July 3, 2012).

## V. There Is No Personal Jurisdiction Over The Non-Contracting Defendants.

With supporting declarations, the Non-Contracting Defendants showed that the Court does not have general or specific jurisdiction over them and that they are not alter egos of each other or of Nord. MTD at 23. In his opposition, therefore, Plaintiff turns to a brand-new, unpled theory: that the Non-Contracting Defendants are subject to personal jurisdiction because they are Nord's "partners in Nord Security." Opp. at 22. In support, Plaintiff cites "15 facts": that "Defendants" use collective pronouns and terminology in public statements (Opp. at 21-22 ¶¶ 1-2, 4-7, 11-14), that "Defendants" share an email domain name (*id.* ¶ 3) and trademarks (*id.* ¶¶ 8-9), that "two best friends" created Nord's VPN software (*id.* ¶¶ 10-11), and that the same counsel represents all Defendants in his lawsuit (*id.* ¶ 15). Opp. at 21-22.[8]

Plaintiff names a specific Defendant in only two of the 15 "facts." In no. 8, Plaintiff asserts only that different entities have owned certain "intellectual property" at different times, and, in no. 9, that NordVPN S.A. uses a trademark owned by NordSec B.V. Opp. at 22. Shared marketing or branding does *not* create a partnership, as even Plaintiff's cases show. In *Price v. Greensboro News & Rec., LLC*, No. 1:19-cv-960 (CCE), 2020 WL 586674 (M.D.N.C. Feb. 6, 2020), the court

---

[8] The "Impact Report" cited by Plaintiff (Dkt. 59-4) describes the global impact of Nord-branded software on issues such as free speech, internet security, sustainability, and human rights. Nothing in the document shows that any Defendants "share[] in profits and losses." Opp. at 22.

8

held that Berkshire Hathaway and BH Media Group were *not* in a partnership (or alter egos) even though BH Media's website and handbook stated that it is "A Berkshire Hathaway Company." *Id.*, 2020 WL 586674, at *3-5. Likewise, in *Wilder v. Hobson*, the court held that defendants were not partners, though they shared signage, branding, and a telephone number. *Id.*, 101 N.C. App. 199, 202-03 (1990). This makes sense; a Ford dealer in Germany is not subject to jurisdiction in a North Carolina suit against a local Ford dealer simply because it uses "Ford" brands. And as to the remaining 13 "facts," Plaintiff does not distinguish among the Non-Contracting Defendants at all, such as, for example, by describing each one's role in the alleged partnership.

Plaintiff's remaining cases are also inapposite. In *Walker v. White*, 609 F. Supp 2d 529 (W.D.N.C. 2009), the Court held that defendants White and CPBBC, Inc. were partners because plaintiff established that White had used CPPBC to divert funds that belonged to the alleged partnership. *Id*. at 537-38. There are no such allegations here. In *Avanti Hearth Prods., LLC v. Janifast, Inc.*, No. 10-cv-000019 (FDW), 2010 WL 3081371, at *3-5 (W.D.N.C. 2010), the court held that defendant corporations were a partnership because they shared officers and directors, engaged in a significant debt exchange, explicitly called themselves partners, and shared a principal place of business. Here, Defendants maintain their *own* finances, have their *own* places of business, and generally do *not* share officers or directors. MTD at 7-8. Plaintiff argues that "Nord Security's singular valuation and statement that its capital investment was into 'Nord Security' shows that the partnership shares in profits and losses," citing *Rhue v. Rhue*, 658 S.E.2d 52 (N.C. App. 2008). Opp. at 22. But *Rhue* concerns property ownership by cohabitants and has nothing to do with jurisdiction, and Plaintiff's argument that the "partnership shares profits" once again *assumes* the partnership exists. To establish the existence of a partnership in the first place, as he must, Plaintiff would have to show (among many other factors) that the individual

9

*Defendants* share profits. He does not. Nor does the "singular valuation" of a group of companies under one name—in this case "Nord Security"—make partners out of each subsidiary. Ford can announce global results without turning its individual worldwide dealers into each other's partners.

As to alter ego, Plaintiff acknowledges that he must show that one defendant has "complete domination" over another, Opp. at 24, but he does not examine the factors or refute the evidence that Defendants observe corporate formalities, maintain separate corporate records, and do not comingle funds. *See*, MTD at 24. Here too, he does not distinguish among the Non-Contracting Defendants, arguing instead, vaguely and by implication, that the "global business strategy" of a "fictitious" entity called "Nord Security" creates personal jurisdiction over each of them. Opp. at 24. And although he refers to the 15 "facts" from his partnership theory, Plaintiff discusses only shared ownership or use of "intellectual property" (presumably trademarks), *id*, but he cites no decision in which a trademark license between distinct corporations supported a finding of alter ego. Because Plaintiff "has not articulated with reasonable particularity the requisite disregard of corporate formalities," the Court should reject his alter ego theory. *See Krausz Indus. Ltd. v. Smith-Blair, Inc.*, 188 F. Supp. 3d 545, 557 (E.D.N.C. 2016); MTD at 24.[9]

There is no risk of injustice to Plaintiffs from dismissing the Non-Contracting Defendants for lack of jurisdiction. Nord would remain a defendant, and Plaintiff does not argue that Nord could not satisfy a judgment or that Defendants are using corporate form to avoid liability. But it *would* be unjust to require the Non-Contracting Defendants, as to whom there is no specific or general jurisdiction, to appear in this Court on Plaintiff's flimsy alternative theories. The Court

---

[9] Plaintiff relies on *Pfizer Inc. v. Synthon Holding, B.V.*, 386 F. Supp. 2d 666 (M.D.N.C. 2005), but that case is inapposite. In *Pfizer*, the alter ego company was created specifically "to manipulate jurisdiction," and its finances, policies, and business practices were "completely dominated and controlled" by the other defendants. *Id.* at 678-79. Plaintiff alleges no such facts here.

10

should also deny Plaintiff's request for jurisdictional discovery because he has not "offered any evidence or information even hinting at facts to support [his] theories." *Price*, 2020 WL 586674, at *5 (citing *Krausz Indus.*, 188 F. Supp. 3d at 557).

## VI. The Court Should Dismiss With Prejudice.

Plaintiff seeks leave to amend. Opp. at 25, n.22. This Court should deny that request. "[W]hen a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend." *United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 305 n.6 (4th Cir. 2017). Plaintiff has already amended once, after having had four weeks to consider Nord's motion to dismiss his original Complaint. He then made non-trivial changes to his allegations, but without improving his legal position, because no amendment can save him from the fundamental problems: his subscription was never renewed, and he was refunded the full price of his initial subscription months before he sued.

## CONCLUSION

The Court should dismiss the Amended Complaint with prejudice.

Dated: October 8, 2024　　　　　　　　　Respectfully submitted,

**MCGUIREWOODS LLP**

By: */s/ Jodie Herrmann Lawson*
　　Jodie Herrmann Lawson
　　N.C. State Bar No. 42900
　　Jessica L. O'Brien
　　N.C. State Bar No. 56679
　　201 N. Tryon Street, Suite 3000
　　Charlotte, NC 28202-2146
　　Telephone: 704.343.2000
　　Facsimile: 704.343.2300
　　Email:　　jlawson@mcguirewoods.com
　　　　　　　jobrien@mcguirewoods.com

**FENWICK & WEST LLP**

　　Jedediah Wakefield
　　Ethan Thomas
　　Samuel Sahagian
　　555 California Street, 12th Floor
　　San Francisco, CA 94104
　　Telephone: 415.875.2300
　　Facsimile: 650.938.5200
　　Email:　　jwakefield@fenwick.com
　　　　　　　ethomas@fenwick.com
　　　　　　　ssahagian@fenwick.com

　　Adam Gahtan
　　902 Broadway, 18th Floor
　　New York, NY 10010
　　Telephone: 212.430.2600
　　Facsimile: 650.938.5200
　　Email:　　agahtan@fenwick.com

*Counsel for Defendants Nordvpn S.A., Nord Security Inc., NordSec Ltd, NordSec B.V., and Tefincom S.A.*

**CERTIFICATE REGARDING ARTIFCIAL INTELLIGENCE**

I certify that: (1) no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in standard online legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and (2) every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

*/s/ Jodie Herrmann Lawson*
Jodie Herrmann Lawson