IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:24-CV-00277-KDB-DCK

| | |
|---|---|
| DENNIS HANSCOM, **Plaintiff,** v. NORDSEC LTD.; TEFINCOM S.A.; NORDSEC B.V.; NORD SECURITY INC.; AND NORDVPN S.A., **Defendants.** | **ORDER** |

In this putative class action, Plaintiff contends that Defendants should be held liable for "tricking" online consumers into purchasing automatically renewing internet security services and making it difficult to cancel their subscriptions. Now before the Court is Defendants' Motion to Dismiss all of Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6). (Doc. No. 54).

By his Complaint, Plaintiff joins the chorus of popular discontent with the difficulty of discontinuing various services, memberships and subscriptions, especially as compared to the ease of signing up online. This dissatisfaction has led to numerous legislative and regulatory responses,[1] including the North Carolina statute which Plaintiff asserts Defendants have violated. However, notwithstanding these legitimate societal concerns, each case rises and falls on its own merits. That is, Plaintiff must first establish that this Court has jurisdiction over the matter and persons involved,

---

[1] *See* Rule Concerning Recurring Subscriptions and Other Negative Option Programs, 16 CFR Part 425, announced October 16, 2024 ("click to cancel" rule requiring sellers to make it as easy for consumers to cancel an enrollment as it was to sign up).

1

in addition to proving that he has alleged claims upon which relief may be granted. For the reasons discussed below – including that Plaintiff canceled his subscription before it renewed and he was given a refund of his initial payment months before this action was initiated – the Court finds that Plaintiff has not suffered a concrete injury sufficient to give him standing to pursue this action and that he has not established that a class of similarly situated Plaintiffs would meet the required monetary threshold to support diversity jurisdiction. Therefore, the Court lacks subject matter jurisdiction over this matter and will grant Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1). However, the Court does not reach and expresses no opinion on the lawfulness of Defendants' business practices or Defendants' other arguments.

## I. LEGAL STANDARD

A motion to dismiss based on Federal Rule of Civil Procedure 12(b)(1) addresses whether the court has subject matter jurisdiction to hear the dispute and Plaintiff bears the burden of proving that subject matter jurisdiction exists. *Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "[F]ederal courts are courts of limited jurisdiction, constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998) (quotation omitted); *see Gunn v. Minton*, 568 U.S. 251, 256 (2013); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). There is no presumption that a federal court has subject matter jurisdiction and even if, as may be the circumstance here, the parties agree to have their dispute decided in federal court, the Court has an independent obligation to hear only those cases within its limited jurisdiction. *See Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999). However, "when a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial

2

Case 3:24-cv-00277-KDB-DCK    Document 63    Filed 11/19/24    Page 2 of 13

court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009).

More specifically, the threshold inquiry in determining subject matter jurisdiction is whether the plaintiff has "standing" to assert his claims. The principle of standing originates from Article III of the United States Constitution, which "confines the federal judicial power to the resolution of 'Cases' and 'Controversies'." *See TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) (quoting U.S. CONST. art. III § 2). The standing inquiry asks, "whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752 (1984); *see Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471 (1982) ("The requirements of Art. III are not satisfied merely because a party requests a court of the United States to declare its legal rights…"). The doctrine consists of both constitutional requirements and "prudential principles." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91 (1979).

In short, if a plaintiff lacks standing, then there is no case or controversy, and the court lacks subject matter jurisdiction over his claims. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The "irreducible constitutional minimum" of standing consists of three elements. "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992); *Spokeo*, 578 U.S. 330 at 338. Indeed, "Article III standing

3

requires a concrete injury even in the context of a statutory violation." *Id.* at 341; *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (to establish injury in fact, plaintiff's allegations must be sufficient to show he suffered a concrete harm); *see Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 192 (2000) (The "[s]tanding doctrine functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake."); *Hensley v. City of Charlotte*, No. 320CV00482KDBDSC, 2023 WL 2533083, at *1–2 (W.D.N.C. Mar. 15, 2023).

A plaintiff bears the burden of establishing standing "for each claim" advanced and "for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *Dress v. Cap. One Bank (USA), N.A.*, No. 1:19-CV-00343, 2019 WL 3451304, at *2–4 (E.D. Va. July 30, 2019), aff'd, 849 F. App'x 55 (4th Cir. 2021). Also, with respect to putative class actions, the "Supreme Court has made clear that 'named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)) (internal quotation marks omitted). In other words, if a named plaintiff in a purported class action cannot establish standing, she cannot "seek relief on behalf of [herself] or any other member of the class." *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

## II. FACTS AND PROCEDURAL HISTORY

Defendant Nordvpn S.A. ("Nord") and its affiliates NordSec Ltd, NordSec B.V., Nord Security Inc., and Tefincom S.A. (the "Non-Contracting Defendants") are broadly engaged in the business of selling internet security products and services to consumers in North Carolina and

4

across the United States, including a virtual private network ("NordVPN"), a password manager ("NordPass"), and encrypted cloud storage ("NordLocker").[2] *See* Doc. No. 50 (First Amended Complaint ("FAC") at ¶ 2, 26.

Plaintiff alleges that he enrolled in Nord Security's "risk-free" 30-day trial period for NordVPN, NordPass, and NordLocker on approximately August 2, 2023, *Id*. at ¶¶ 77–78, which Nord characterizes as simply the purchase of a "two-year plan" for those services. *See Id*. at ¶ 53. In connection with the transaction, Nord charged Plaintiff's credit card $131.76. *Id*. at ¶ 79. Plaintiff contends that Nord "deploys at least five deceptive and unlawful tactics designed to trap consumers." *Id*. at ¶ 7. These include the allegation that Nord Security makes deceptive promises that consumers can "try" its services "risk-free for 30-days" during which consumers can "cancel your subscription and get your money back," rendering the trial "no hassle, no risk." *Id*. at ¶¶ 9, 50–52. Plaintiff complains that rather than offering a trial that requires no payment or a low cost, Nord Security instead charges the entire cost upfront when the trial begins, promising a full refund if the user cancels within 30 days. *Id*. ¶ 49. He argues this "risk-free" and "no hassle" trial is an illusion because Nord imposes a supposedly "hidden" requirement that customers must cancel, and separately and additionally request a refund after canceling. *See id*. at ¶ 10. Relatedly, Plaintiff

---

[2] NordSec Ltd, a holding company organized under the laws of England & Wales with its principal place of business in London, England, once owned the intellectual property of the Nord brand. Doc. No. 55-1 at ¶ 3. NordSec B.V., a holding company organized under the laws of the Netherlands with its principal place of business in Amsterdam, the Netherlands, currently owns the intellectual property related to the brand. Doc. No. 55-2 at ¶ 3. Nord Security Inc., a Delaware corporation with its principal place of business in Lewes, Delaware, sells and provides business-to business services, but not retail consumer services. Doc. No. 55-3 at ¶ 3. Tefincom S.A., a Panama corporation with its principal place of business in Panama City, Panama, was the contracting entity for retail consumer VPN services purchased on or before November 15, 2020, prior to the Plaintiff's purchase. Doc. No. 55-4. Defendants contend that the Court lacks personal jurisdiction over these entities. Because the Court finds that Plaintiff has no standing to pursue his claims, the Court need not and does not reach this issue.

5

alleges that Nord fails to provide "clear and conspicuous" disclosures, *id*. at ¶¶ 11-12, 53-56, 66-68, makes its subscriptions "exceedingly difficult to cancel," *id*. at ¶ 13, and charges customers for renewal periods 14 days before the end of each subscription period. *Id*. at ¶ 14. In response, Nord points to various portions of its services contract referenced in the FAC, asserting that its customers have ample notice of the governing payment, renewal and cancellation terms. *See* Doc. No. 55 at 3-6.

Plaintiff downloaded the purchased software and used the services briefly, but decided to cancel his subscription. He called customer service and canceled during the trial period on August 15, 2023. FAC at ¶¶ 80–81. Plaintiff alleges that he was told his subscriptions were canceled and he would not be charged unless he resubscribed. *Id*. Plaintiff received an email confirming the cancellation and says that he assumed he would be timely refunded. *Id*. ¶¶ 82-83. On approximately September 26, 2023, Plaintiff learned from a "third party billing statement" that the refund had not occurred. He called Nord and was informed by Nord's customer service representative of Nord's position that his cancelation only applied to the autorenewal of his subscription and that he was required to affirmatively request a refund (within 30 days of his purchase). *Id*. at ¶¶ 85-86. Plaintiff disputed the charge on his credit card the same day, and Nord refunded him $131.76, the full amount of his payment, two days later on September 28, 2024 (44 days after Plaintiff called to cancel). *Id*. at ¶ 87.

Plaintiff filed this proposed class action under Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on March 5, 2024, asserting claims for violation of the North Carolina Automatic Renewal Law ("ARL"), N.C.G.S. § 75-41, et seq. and the North Carolina Unfair and Deceptive Practices Act, N.C.G.S. § 75-1.1, et seq. as well as common law claims for conversion, unjust enrichment and negligent misrepresentation. *See* Doc. No. 1. The class Plaintiff seeks to

represent includes "all Nord customers in the United States who were subjected to Defendants' misleading subscription practices" and subclasses of North Carolina residents who were "automatically enrolled into and charged for at least one month of Nord membership." *Id.* at ¶¶ 76-77. Plaintiff alleges that this Court has jurisdiction over his claims pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate claims of the class exceed $5,000,000, the class has more than 100 members, and diversity of citizenship exists between at least one member of the class and Defendants. Also, to the extent Plaintiff lacks jurisdiction under CAFA, he asks the Court to exercise supplemental jurisdiction over Plaintiff's claims under 28 U.S.C. § 1367. With respect to damages, Plaintiff seeks an award of compensatory damages of at least $100,000,000; an injunction or other appropriate equitable relief requiring Defendants to refrain from engaging in the deceptive practices alleged; an award of punitive damages and other related relief. *See* Doc. No. 1 at pp. 34-35.

On July 3, Defendants filed a Motion to Dismiss the Complaint, arguing, in part, that Plaintiff lacked standing because he had canceled his subscription before it "auto renewed" and thus had suffered no concrete harm. Plaintiff obtained an extension of time to respond to the motion and then, on July 31, 2024, filed an Amended Complaint instead of defending the initial version. In the FAC, Plaintiff dropped his claim for negligent misrepresentation and acknowledged, for the first time, that Nord had refunded all the payments he had made. However, he alleged that Nord "wrongfully retained Plaintiff's funds from August 15, 2023, until September 28, 2023" and "Plaintiff was further damaged by the lost time value of his funds between August 15, 2023 and September 28, 2023." FAC at ¶ 91. The FAC does not allege when (or if) Plaintiff actually paid the credit card bill on which the initial charge appeared. Otherwise, the FAC asserted the same

7

Case 3:24-cv-00277-KDB-DCK   Document 63   Filed 11/19/24   Page 7 of 13

causes of action on behalf of the same proposed classes with the same alleged damages. The assertion of federal diversity jurisdiction under CAFA also remained the same.

Defendants filed a second Motion to Dismiss on August 21, 2024, requesting that Plaintiff's claims be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6). (Doc. No. 54). The motion has been fully briefed and is ripe for the Court's decision.

### III. DISCUSSION

#### A. Standing

The first threshold Plaintiff must meet in pursuing this action is to establish standing. As described above, to have standing Plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo*, 578 U.S. 330 at 338. And, if Plaintiff himself lacks standing, then his "class" claims must fail as well. *Doe v. Obama*, 631 F.3d at 160. Plaintiff canceled his Nord subscription without cost or penalty prior to any "auto renewal" so he has suffered no injury with respect to any claim based on Nord's alleged unlawful conduct related to the automatic renewal of service subscriptions. Therefore, regardless of whether the North Carolina ARL might apply to Nord's business practices (which the Court does not decide here), in the absence of an injury caused by a violation of the statute, Plaintiff does not have standing to pursue a claim under the ARL.

Plaintiff's other claims for unfair trade practices, conversion and unjust enrichment are based on Nord's requirement that customers separately request a refund of their initial subscription payment, even if they have "canceled" their subscription within 30 days of purchase. Plaintiff admits that he received a refund of all payments that he made after requesting his refund (albeit

8

later than he expected). Therefore, he has similarly suffered no injury – and has no standing to complain about – Nord's alleged wrongful failure to refund initial subscription payments.

However, Plaintiff argues that he has standing to pursue all his claims based on his alleged loss of the "time value" of not receiving the refund of his subscription payment immediately upon canceling his subscription on August 15, 2023 (i.e., the 44-day period until September 28, 2023, when the refund was made). The Court disagrees. Even without the benefit of any allegations detailing if/when Plaintiff actually paid for the subscription and ignoring any reasonable period during which Nord would presumably be entitled to process refunds without legal jeopardy, Plaintiff's maximum "time value" loss (generously calculated with a 5% discount rate) would be less than a dollar (44/365 x 132 x .05 = .80). This alleged "injury" is insufficient to support standing.

As noted above, the principle underlying the requirement of standing is that there must be a sufficient "case or controversy" to entitle a plaintiff to adjudication of his asserted claims. *See TransUnion*, 594 U.S. at 423-24 (Federal courts do not "exercise general legal oversight" and "do not issue advisory opinions."). That is, the standing requirement ensures that only those who have a sufficient, concrete interest in a case are permitted to command the time and resources of the federal courts. Allowing a plaintiff who has received a full refund of the money he claims to be owed, but alleges the loss of a few coins because of a short delay in receiving the refund, to have full standing (particularly to pursue a class action allegedly involving thousands of class members) would plainly elevate form over substance.[3] In the absence of a real, meaningful loss, Plaintiff asks

---

[3] Indeed, it is not even clear that loss of the "time value" of money in this context would be an independent injury. For example, in a typical case alleging breach of contract or other economic injury, the amount of the loss is routinely held to be the damage caused by the breach (e.g., the amount due under the contract) and the "time value" of the delay in payment is reflected in the

9

the Court, in practical effect, to rule generally on the lawfulness of Nord's business practices, but that is plainly not permitted under *TransUnion*. "Prudential principles" also counsel against allowing standing under these facts. If any alleged "delay" in resolving a dispute creates standing to assert a claim (based on a few cents of claimed monetary "time value") even where the putative plaintiff's monetary loss is fully repaid, then parties will inevitably be discouraged from promptly resolving their claims.[4] *See Epstein v. JPMorgan Chase & Co.*, No. 13 CIV. 4744 KPF, 2014 WL 1133567, at *6–7 (S.D.N.Y. Mar. 21, 2014) (no "injury in fact" where Plaintiff was reimbursed for all economic harm incurred and noting that a contrary holding would discourage resolution of disputes).

The limited authority on this issue also supports the Court's decision. In *Dress v. Cap. One Bank (USA), N.A.*, No. 1:19-CV-00343, 2019 WL 3451304, at *2–4 (E.D. Va. July 30, 2019), aff'd, 849 F. App'x 55 (4th Cir. 2021), the court held that plaintiff lacked standing to pursue a class action against a credit card company because she had received a pre-litigation refund of the full amount of her claim, despite the defendants failing to "compensate Dress for the lost time value of the refunded interest payment." After noting that "it is unclear whether the lost time value of such a small sum qualifies as a cognizable constitutional injury," the court concluded, "[w]here a plaintiff raises an injury in fact argument premised solely on the lost time value of money, conclusory allegations that the plaintiff 'was deprived of the use of those funds and is entitled to be compensated for [the] lost use of funds' are not sufficient to establish injury in fact even at the

---

award of pre-judgment interest as ancillary damages. (Of course, in a particular case, a lengthy delay in a large payment could itself cause significant specific damages, but that is not the situation here, where the amount is unspecified and obviously *de minimis*).

[4] To be clear, the circumstances here do not involve a defendant attempting to "pick off" a plaintiff after a law suit has been filed or otherwise derail claims during the course of a dispute. Here, Plaintiff received and accepted a refund of all his payments long before legal action was pursued.

10

motion to dismiss stage." *Id*. (quoting *Taylor v. Fed. Aviation Admin.*, 351 F. Supp. 3d 97, 103 (D.D.C. 2018)).

Similarly, in *Taylor v. Fed. Aviation Admin,* the plaintiff alleged that "he lost the use of funds during the period in which the FAA lacked statutory authority to collect such registration fees" and "had not been compensated for the lost use of funds at the time he filed suit." 351 F. Supp. 3d at 102. The court found plaintiff lacked standing, stating that "even if the lost time value of money could suffice to make out an Article III injury, the 'bare allegation that [a plaintiff] has lost the value of the time and resources . . . sets out an injury that is too abstract and indefinite to confer Article III standing.'" *Id*. at 103 (internal citations omitted). And, other district courts have rejected the notion that standing may be found when the amount wrongfully taken or withheld was discharged before filing suit, which is the situation in this case. *See Amirhamzeh v. Chase Bank USA, N.A.*, No. CV 13-00527 BRO FFMX, 2013 WL 7219270, at *4 (C.D. Cal. Oct. 7, 2013) (granting motion to dismiss because plaintiff's receipt of a pre-litigation refund deprived her of standing); *Holaway v. Protective Life Ins. Co.*, No. 4:07-CV-109 (CDL), 2007 WL 2904162, at *2 (M.D. Ga. Oct. 3, 2007) (motion to dismiss granted for lack of standing where insurance premiums in dispute refunded); *Air Espana v. Brien,* 165 F.3d 148, 153 (2d Cir.1999) (upholding dismissal of claims related to canceled fines imposed by the defendant); *Hunter v. C.I.R.,* No. 09 Civ. 4268(JSR)(GWG), 2010 WL 2605715, *4 (S.D.N.Y. June 29, 2010) (dismissing plaintiff's claim for lack of subject matter jurisdiction where plaintiff had received the refund for which he filed suit); *White v. First Am. Registry,* 230 F.R.D. 365, 368–69 (S.D.N.Y.2005) (holding, in the context of a class certification motion, that plaintiff did not have standing where defendant had remedied the alleged wrongful conduct prior to plaintiff filing suit).

Accordingly, the Court finds that Plaintiff lacks standing to pursue his claims and Defendants' 12(b)(1) motion to dismiss will be granted.[5]

B.  **CAFA Diversity Jurisdiction**

Beyond the absence of standing, Plaintiff's lack of injury also leads to the conclusion that the Court does not have CAFA diversity jurisdiction, which is required for the Court to hear Plaintiff's wholly state law claims. Federal Rules of Civil Procedure 23(a)(1) requires that "the claims or defenses of the representative parties" be "typical of the claims or defenses of the class." Plaintiff's experience is not "typical" of class members whose subscriptions were auto renewed and/or did not receive a refund after cancellation. Therefore, Plaintiff can only properly represent putative class members who, like Plaintiff, never had their Nord subscriptions "auto renewed" and received a full refund of their initial subscription payment.

As described above, CAFA diversity jurisdiction requires that the aggregate "matter in controversy exceed $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). Properly limited to those claims for which Plaintiff could be a class representative, the amount in dispute appears to fall far short of the required threshold. Plaintiff alleges that he "does not know the exact size of the Class," but believes "that the Class encompasses thousands of consumers." As calculated above, Plaintiff's claimed loss of the "time-value" of his allegedly delayed refund is less than a dollar. Even multiplying that amount several times, the number of alleged class members would have to be in the millions, rather than the thousands as Plaintiff alleges, for the

---

[5] Beyond his monetary claims, Plaintiff also lacks standing to sue for injunctive relief. The Supreme Court has "repeatedly reiterated that 'threatened injury must be certainly impending to constitute injury in fact,' and that 'allegations of possible future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphasis in original). Plaintiff has failed to show any such certainly impending injury from continuing to do business with Nord, as he is now well aware of the terms of its offerings. Plaintiff therefore lacks standing to pursue claims for injunctive relief.

12

aggregate amount of loss to exceed $5,000,000. Therefore, because Plaintiff has failed to establish the Court's diversity jurisdiction over his claims, the Court concludes that it lacks subject matter jurisdiction over this action and it must be dismissed. *See Foy v. State Farm Mut. Ins. Co.*, No. 320CV00261KDBDCK, 2022 WL 135917, at *1 (W.D.N.C. Jan. 14, 2022) (Pursuant to Fed. R. Civ. P. 12(h)(3), the Court may sua sponte consider the issue of subject matter jurisdiction at any time and if the Court determines that it lacks subject matter jurisdiction, the court must dismiss the action.).

Finally, Defendants should not exaggerate the scope of this ruling. By this Order, the Court does not in any way authorize or intend to encourage Nord's allegedly unlawful business practices. Whether or not Nord's auto renewal, cancellation and refund policies (particularly the requirement of a separate refund request following the cancellation of a customer subscription within the advertised "30-day trial period") is lawful under all the relevant circumstances cannot be determined in this action for the reasons stated above. However, the Court expresses no opinion on the merits of any proper plaintiff raising those questions in an appropriate forum.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Motion to Dismiss (Doc. No. 54) is **GRANTED**; and
2. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: November 19, 2024

Kenneth D. Bell
United States District Judge